P. B. CORRELL, Appellee, v. WILLIAMS & HUNTING CO., Appellant.

**MASTER AND SERVANT:** Assumption of Risk—"Assumption of Risk Act"—Duty to Repair. A servant *who is under no duty to repair* does not, by continuing at work without complaint or promise of betterment, waive the negligence of the master and assume the risk arising out of the act of the master in knowingly

violating his common law and statutory duty to furnish the servant a reasonably safe place of work and reasonably safe machinery, etc., with which to work. And even when the servant, in the ordinary course of his employment, *is under a duty to repair*, he assumes no risk incident to such violation by the master, by continuing work without repairs, unless the danger is so imminent that a reasonably prudent person would not have continued in the work without making repairs. (Assumption of Risk Act, Sec. 4999-a3, Sup. Code, 1913.)

DEEMER, J., dissents.

*Appeal from Linn District Court.*—W. N. TREICHLER, Judge.

·THURSDAY, JANUARY 20, 1916.

ACTION to recover for personal injuries. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed*.

*Dawley, Jordan & Dawley*, for appellant.

*Rickel & Dennis*, for appellee.

GAYNOR, J.—This case was before this court and determined by it on the 25th of September, 1914. The finding then was adverse to appellant. At the same term in which the opinion was filed, a petition for rehearing was submitted and later a rehearing granted. The case is again before us for determination upon the merits of the original appeal.

The facts of the case are substantially as follows: The defendants were conducting a woodworking establishment in Cedar Rapids. Plaintiff was. a woodworker. Prior to the accident, he had been engaged at his trade for about four years, the last 13 months of which he was employed by the defendants. He was employed to do general work. This required him at times to use different machines, owned and operated by the defendants in and about their business. At the time of his injury, he was working with a combined machine on which was then a ripsaw. In some of the work done with this machine, guards were used; but for other kinds of work, including ripsawing, no guards were

MASTER AND
SERVANT: assumption of
risk: "Assumption of Risk
Act": duty to
repair.

used. At the time of the accident, the plaintiff was using the machine for ripsawing, and it was unguarded. The manner in which the accident happened was, as shown by the testimony, as follows. He was ripsawing pieces of oak wood which were about 18 inches long, 8 inches wide, and 3½ inches thick. His purpose was to make them of the width of 7¼ inches. The wood was green, and inclined to bind against the saw. To lessen this and to reduce the possibility of danger, he adjusted the saw and table so that, in pushing the board over the saw, the groove would be cut about one half the thickness of the board. He then turned it over, again running the board through. The second cutting finished the operation. He had cut two or three of the blocks before he was injured, all of them bothering him somewhat because of a tendency to bind. He took up the block which was being sawed at the time of the injury and pushed it over the saw. As it was binding some, he endeavored to hold it down with his left hand while pushing it with his right hand. This, he claims, was done to prevent its rising and falling back against him. While so engaged, the block was knocked from his hands, and his left hand came in contact with the saw, resulting in the injuries complained of.

There was evidence on the part of the defendants to the effect that the manager of the mill, acting for the defendant, had previously called the plaintiff's attention to a guard, and asked him if he could put it on, to which it is claimed that the plaintiff replied that he could. This conversation, however, was denied by the plaintiff. The plaintiff's action is based upon a charge of negligence, and the negligence charged is that the defendants failed to provide plaintiff with a safe place to work; that they failed to properly guard the ripsaw; did not provide proper and safe appliances for doing the work required of the plaintiff.

The answer was a general denial, and a plea of assumption of risk, based upon the allegation that the saw and appliances with which plaintiff was working at the time were the

same that he had used for months, and were in the same condition, and that he knew the saw was unguarded.

There was a trial to a jury, resulting in a verdict for the plaintiff, and, judgment being entered upon the verdict, defendants appeal, and assign several errors upon which they predicate a right to have a reversal. The first relates to an assumption of risk, the charge being that the court erred, not only in the giving of instructions upon this question, but in refusing to give instructions asked by the defendants. In speaking of assumption of risk, we take it that counsel do not refer to that risk which is ever present with and attendant upon the employment, when the master has done his full duty to the servant, but rather that added risk which comes from a failure of the master to discharge his duty to the servant.

A proper understanding of this controversy involves the following provisions of our statute. Section 4999-a2 of the Code Supplement of 1913 provides:

"It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded. No person under sixteen years of age, and no female under eighteen years of age shall be permitted or directed to clean machinery while in motion. Children under sixteen years of age shall not be permitted to operate or assist in operating dangerous machinery of any kind."

Section 4999-a3 provides:

"That in all cases where the property, works, machinery or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish rea-

sonably safe machinery, appliances or place to work, the employe shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment.''

The first section above set out was enacted by the 29th General Assembly (Chapter 149, Section 2); the second by the 33d General Assembly (Chapter 219, Section 1). The first section has been construed several times by this court, and held to impose upon the master an affirmative duty to provide the protection therein required, and that a failure to do so is negligence *per se*. See *Obenchain v. Harris & Cole Bros.*, 148 Iowa 86; *Poli v. Numa Block Coal Co.*, 149 Iowa 104; *Stephenson v. Sheffield Brick & Tile Co.*, 151 Iowa 371; *Miller v. Cedar Rapids Sash & Door Co.*, 153 Iowa 735; *McCarney v. Bettendorf Axle Co.*, 156 Iowa 418. It will be noticed that Section 4999-a2, above set out, makes it the duty of the owner, agent, superintendent or other person having charge of any manufacturing or any other establishment where machinery is used, to properly guard all saws used in and about the business. The legislature imposing this duty upon the manufacturer undoubtedly considered it necessary and proper to be done for the safety of the employee. Negligence always presupposes a duty, either legal or contractual. A duty being imposed, a failure to discharge it, resulting in injury to another, is actionable negligence. Therefore, we start with the proposition that it was the duty of these de-

fendants to properly guard the saw furnished the plaintiff for use in and about its factory. When properly guarded, the servant assumed the risk incident to its use. When not properly guarded, he did not assume the risk incident to its use, though he continued to use it in its unguarded condition, except as hereinafter stated. This is as far as we are required to consider the first section in its application to the case under consideration.

In the next subdivision of Section 4999, hereinbefore set out, the legislature recognized not only the common-law obligation of the master to furnish a reasonably safe place to work and reasonably safe appliances, machinery and tools with which to do the work, but also the provisions of Section 4999-a2; and says that the employee shall not be deemed to have assumed the risk by continuing in the prosecution of the work, when the risk is due to defects in the machinery furnished or due to a failure of the master to perform the duties of a master, imposed by the common law or the statute, even though the employee have knowledge of such dereliction, when it appears that the master also had knowledge, unless it be made to appear that it was the duty of the employee, in the usual and ordinary course of employment, to make repairs or remedy the defects; and then he is deemed to have assumed the risk or waived the master's negligence only when the danger is imminent and to such an extent that a reasonably prudent person would not have continued in the prosecution of the work.

It will be noted from these statutes that there was a purpose on the part of the legislature to change the law as heretofore announced and followed, touching the assumption of risk due to the negligence of the master. The old rule was that, where the master had failed to discharge the duty of a master, and the servant knew this and continued to work without complaint and without promise of repair, he assumed all the added risk due to the master's dereliction of duty. Under this statute, he does not do so. Its provisions are that, where

it is the duty of the master to do the things contemplated by the statute, or imposed upon the master by common law, the employee does not assume the risk of such dereliction of duty by continuing to work, when he and the master both have knowledge of the master's shortcomings. To this, however, exception is made when, in the usual and ordinary course of his employment, it is the duty of the employee to make such repairs or remedy such defects. Proceeding further, however, the legislature says that, even where it is the duty of the servant to repair, the servant shall not be deemed to have assumed the risk or waived the negligence unless the danger be imminent, so that a reasonably prudent man would not continue in the prosecution of the work.

The conditions referred to are those which are created by the master's negligence and which it is the duty of the servant, in the ordinary course of his employment, to remedy. These must necessarily refer to the ordinary risks which flow from the master's negligence. Such risks, he does not assume by continuing to work, even though it is his duty, in the ordinary course of his employment, to make repairs. The only risks which he is deemed to have assumed by continuing to work (when it is his duty, in the ordinary course of his employment, to make repairs) are those risks which flow from conditions which render danger imminent to him if he continues to work. Then he cannot continue to work without making the repairs, if a reasonably prudent man would not have continued to work without making repairs or remedying the defects.

To give the statute its proper meaning and to correctly express the thought of the legislature and to make the law conform to the evident intent and purpose of the legislature, as expressed in this statute, it must be read as follows: It is the duty of the master to furnish the servant a reasonably safe place in which to do the work assigned, and reasonably safe tools or appliances with which to accomplish his work.

If he fails in this, or the place or instrumentalities become, with his knowledge, defective or out of repair, the servant shall not be deemed to have assumed the risk incident to such defects or want of repair, by continuing in the prosecution of the work, except when, in the usual and ordinary course of his employment, it is the duty of the servant to make the repairs or remedy the defects; but, under such conditions (that is, where defects exist and it is the duty of the servant in the usual and ordinary course of his employment to remedy them), he shall not be deemed to have assumed the risk by continuing in the employment, unless the danger of continuing is so imminent and to such an extent that a reasonably prudent person would not have continued in the prosecution of the work without making the repairs or remedying the defects.

Any other interpretation of the statute would lead to the conclusion that, if the master furnished a place, and put the servant in the place and furnished him with the tools to discharge the master's business, the master would not be liable if, peradventure, he was so grossly negligent in furnishing the place and implements that imminent danger was thereby created; that the grosser the negligence of the master and the greater the danger to the servant, the less liability there was from resulting injury, even though no duty rested on the servant to remedy conditions.

It will be noticed that the statute provides exemptions to the servant from all assumption of risk due to the master's failure to discharge the duties of a master. He assumes no risk due to the failure of the master, whether imminent or otherwise, unless it was his duty, in the ordinary course of his business, to make repairs or remedy the defects out of which the danger arose. If the failure of the master to furnish a reasonably safe place to work or reasonably safe tools or appliances does not suggest such danger that a reasonably prudent man would apprehend imminent danger therefrom while discharging his duties for the master, he may continue

to work without making the repairs or remedying the defects, though it was his duty, in the ordinary course of his employment, to make repairs or remedy defects. But if the dangers are imminent and to such an extent that a reasonably prudent person would not continue without remedying the defects or making the repairs, then the servant, if he proceeds without doing so and is injured by reason thereof, cannot recover.

Summarizing the statute, we have to say that the statute presupposes negligence of the master; a duty on the part of the servant in the ordinary course of his employment to remedy; no assumption of risk from the negligence of the master, unless a duty to remedy defects or make repairs is imposed on the servant; nor then (under such conditions), unless the danger is imminent, etc. This we take to be the correct interpretation of the purpose and intent of the legislature, as expressed in the statute.

Now the mere fact that the servant, with knowledge of the master's. dereliction and duty, continued in the work without complaint and without promise of repair, does not defeat the servant if injured, although he knew and appreciated that there was some added risk involved in continuing the work under these conditions. He does not assume the added risk, unless it was his duty, in the ordinary course of his employment, to remedy the defect, and then only when the dangers from the defect are such that a reasonably prudent man would not continue to work without making the repairs.

Common knowledge tells us that the master does not and cannot, with his own hands, or by or through his own personal effort, discharge all the duties which the law enjoins upon him for the protection of the servant. He must delegate the discharge of these duties to someone. True, when he delegates it, he cannot escape liability for a failure of the party to whom the duty is delegated to perform the duty; nor can he escape liability if the party to whom he does delegate, discharges the duty in a negligent or careless manner.

The duty is his and the responsibility is his, no matter how menial the servant may be to whom he delegates the performance of the duty he owes, and if one is injured by a failure to discharge the duty, he must respond to the one injured. But while these duties must, in the very, nature of things, often be delegated to someone, and while the master is still holden responsible for the doing of it and the manner of its doing, to the one to whom he owes the performance of the duty, it is no less the master's act when done, and no less the master's omission if not done. It will be noted in this provision of the statute, Sec. 4999-a3, that it is provided that, where the master is derelict in the performance of his statutory or common-law duty, the employee is not deemed to have assumed the risk by continuing to prosecute the work growing out of any defect aforesaid of which the employee may have had knowledge, when the employer had knowledge of such defect.

In the case before us, the jury might have found that both the employer and the employee had knowledge that the saw was unguarded. Under this statute, the servant assumes none of the risks referred to in the statute that arise from the failure of the master to discharge the duties of a master. Under such circumstances, the servant does not, by continuing to work, assume the risk incident to such conditions, except as hereinafter indicated. Under this statute, the servant assumes no risks that arise from the master's failure to furnish him· a reasonably safe place to work and reasonably safe tools and appliances with which to do the work. The duty to furnish these rests upon the master, and he must discharge them if he would escape liability for injuries resulting therefrom. Except where the law absolutely enjoins the doing of a thing as a duty, it is the duty of the master to exercise reasonable care to see that the duty is performed, and to furnish the servant a reasonably safe place to work and reasonably safe appliances. When the statute enjoins the doing of the thing absolutely, the duty is imperative.

It makes no difference whether the risks arising from the master's failure are imminent or otherwise. His duty is the same, no matter what the risks are that arise from a failure to discharge the duty. The failure of the master to discharge the duty of a master rests upon the master, not upon the servant. If, in the ordinary course of his employment, it is the duty of the servant to make repairs or remedy defects, he does not assume risks due to the master's failure to discharge the duties of a master, by continuing to work without making the repairs himself, unless the risk of continuing to work without doing so is so imminent that a reasonably prudent person would not continue in the work without making repairs or remedying the defects. The only *condition* under which the servant can be said to assume any of such risks is when, in the ordinary course of his employment, it is his duty to make repairs or remedy the defects. The statute, however, expressly provides that, *under such conditions* (that is, where the master knows of the defects and it is the duty of the servant, in the ordinary course of his employment to remedy the defects), the servant does not assume the risk, unless the risk is imminent, so that no man of ordinary prudence would continue to work without remedying the defects. If he does not assume to make the repairs, he assumes no risk from defects known to the master. If, in the ordinary course of his employment, it is his duty to make the repairs or remedy the defects, he assumes only imminent risks,—risks so imminent that a man of ordinary prudence would not work without repairing or remedying the defects, or having them remedied.

It is the contention of the defendant, and on this contention he bases a right to reversal, that the statute makes two distinct and separate grounds on which liability may be avoided: (1) That the danger is due to a defect or defects known to the master which the servant agreed to remedy; (2) that the injury was due to conditions that rendered the place or the instrumentalities so unsafe that danger or injury

from them was so imminent and so certain to happen to the servant, if he continued the work, that, as a reasonably prudent man, having due regard for his own safety, he would not have continued in the work without complaint and without promise of repair; that, where the conditions existing and confronting the servant are such that to proceed in the use of the instrumentalities supplied, or to continue in the place furnished, disclosed manifestly such imminent danger to the servant's life or limb that a due regard therefor (that is, for his own safety) required him to remove himself from the zone of such impending and threatening peril; that if he did not do it, he cannot complain of the injuries received, although the condition that confronted him was due to the master's negligence alone and permitted to continue with his knowledge, and this without any duty on the part of the servant to remedy the defects. With this thought in mind, the defendant asked the following instruction, and complains of the court's refusal to give it:

"If the danger in using the ripsaw without a guard was so imminent that a reasonably prudent person would not have continued in the work, then the plaintiff, by continuing in the work, waived the alleged negligence of the defendant and assumed the risk, and would not be entitled to recover."

We think, however, that this instruction does not correctly express the law, for the reason that, under the statute, the servant was not required to desist from work because the master had failed to discharge his statutory duty; that, in continuing to work, he did not assume the risk of danger flowing directly from this failure, except where, in the ordinary course of his employment, it was his duty to make repairs or remedy defects, and then only when, with defects unremedied, the risk was imminent, so that a reasonably prudent man would not have continued to work; that the phrase, "nor shall the employee. under such conditions be deemed to have waived the negligence", relates to such conditions as the servant permitted to exist when, in the ordinary

course of his employment, it was his duty to remedy them, and the existence of which made danger imminent; that the servant does not assume risks from these conditions which the master has knowingly permitted to exist, unless it was the servant's duty to repair them in the ordinary course of his employment, and then he waives the master's negligence and assumes the risk only when the conditions permitted to exist render the place so dangerous or the instrumentalities so unsafe that a reasonably prudent man would not continue in the prosecution of the work because of the imminence of the danger; that the first part of the statute relieves the servant from assumption of risks known to the master, arising out of the master's failure to discharge his statutory duty, except where the servant is charged with the duty, in the ordinary course of his employment, of making repairs or remedying defects; that he can be said to have waived the master's negligence and assumed the added risk only where the danger is imminent and the servant has agreed, or it was his duty, in the ordinary course of his employment, to do the things complained of for the master, and has failed.

So we find and hold that the instruction asked is wrong in this: That it does not differentiate between conditions existing when the servant, in the ordinary course of his employment, has a duty to remedy defects or make repairs, and conditions existing where no such duty rests upon the servant. Making the statute apply concretely to the case at bar, we find that it was the statutory duty of the defendant to guard this saw. It was not guarded. The defendant continued to use it without the guard. Following defendant's contention, we would have to say that, the fact being that the plaintiff used this saw without a guard, the jury should deny him recovery if, in their judgment (or they found the fact to be), the danger from its use was imminent to such an extent that a reasonably prudent man would not have continued to use it; and this though it was not the duty of the servant to place a guard upon it.

In so saying, it would be necessary for us to eliminate much of the statute. The statute says that, where it is the duty of the employer, from the character of the place, work, machinery or appliances, to furnish reasonably safe machinery, appliances or place to work, the employee *shall not be deemed to have assumed,* by continuing the prosecution of work, the risk growing out of any defects aforesaid of which the employee may have had knowledge, when the employer had knowledge of such defects, unless it was the duty of the employee, in the usual and ordinary course of his employment, to make the repairs or remedy the defects. Under this construction, there would be no liability on the part of the employer if he furnished a place that was imminently dangerous, or tools or appliances that a reasonably prudent man would not use, because the servant would then assume the risk involved in the use of such instrumentalities. The greater the danger to the servant from the instrumentalities furnished; the less liability there would be on the part of the master to respond for injuries, though he alone was charged with the duty of remedying defects that caused the injury.

The statute does not, however, so say. The statute says that the servant shall not assume the risks unless it is his duty, in the ordinary course of his employment, to make repairs and remedy defects, and then only when the risk is so imminent that a reasonably prudent man would not continue without making repairs or remedying defects or having it done. We are not concerned so much about the law as it was, as we are concerned about the law as it is. It must be conceded that the legislature is omnipotent within the limits of its constitutional rights. When it speaks, the courts listen and obey. A study of the law as it was prior to the enactment of the statute in question is profitable only in so far as it may aid in the interpretation of the act of the legislature, but the act itself constitutes the law which must govern the court. It is not for us to say that it is a departure from prior legislation, nor that it contravenes the pronounce-

ments of this court upon the same subject. All this must yield to the latest pronouncement of the legislature upon the same subject. It is not for us to say that an act of the legislature appears unreasonable or even unfair when enforced, if the enactment was within the constitutional power of the legislature to make.

The act under consideration, and we think it controls the rights of the parties in this suit, is plain and unambiguous. The rules for the interpretation and construction of legislative enactments are valuable only in so far as, in their application, we are able to better ascertain and determine the intent of the legislature as expressed in the act. Where the act is plain and unambiguous, there is no room for construction. Nowhere in the act does it appear that the employee assumes any risks incident to the negligence of the master, where the master knows of the conditions which constitute the negligence, except where, in the ordinary course of the servant's employment, it is the duty of the servant to make repairs or remedy defects. What could be plainer than to say, *under such conditions,* "nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such an extent that a reasonably prudent person would not have continued in the prosecution of the work".

Men must work to live. There is a class of men in the world who depend upon their daily labor for the maintenance of themselves and family. They are skilled in certain lines of work, and seek employment in these lines. There are men whose business it is to employ these men for their own profit. Without the labor of these men, these institutions could not thrive or even live. The law has assumed to protect the wage-earner. Public policy demands that he have protection in the performance of the world's work, and enjoins upon the master certain duties for protection, as indicated in the acts hereinbefore set out. Even when these factories and places where men are required to work are carefully guarded,

there is risk ever attendant upon their labors, risk to life and limb; these even when the master has used the highest degree of care for the protection of the servant.

The law, as we read it now, does not tolerate negligence on the part of the master that imperils the life or limb of the servant, and so, where the master has failed to discharge the duties of a master, has neglected to provide for the safety of his servant, when it lies within his power to do so, and the danger to the servant is thereby increased beyond the ordinary hazards incident to the work, the law says to the master:

"If you know that this negligence has produced a peril to the life and limb of your servant, you cannot be heard to say that the servant knew it and continued to work without complaint, and the mere fact that you have made the place in which your servant is required to work so imminently dangerous to his life and limb that a reasonably prudent man would not continue to work in the place does not excuse your negligence, if, peradventure, the servant continues to serve you under the conditions which you have created, except only when it is the duty of the servant, in the ordinary course of his employment, to make repairs or remedy the defects. You cannot be heard to say you were so grossly negligent and created such imminent danger that a servant who continues in your employment, under the conditions that you created, must suffer all the loss incident to the injury because, peradventure, he continued in your employment under those conditions."

This, we think, is not only what the legislature intended to say, but what it did in fact say in the enactment under consideration, and we are contented to pronounce the law as we find it written. With this construction of the statute, it is apparent that the court did not err in refusing the instruction asked. This was the only debatable ground, if debatable, in the case.

We find no error justifying a reversal, and the cause is—
*Affirmed.*

LADD, WEAVER and PRESTON, JJ., concur.

DEEMER, J. (Dissenting).—I.  The opinion proceeds upon the theory that the case involves nothing more than the construction of Section 4999-a3 of the Code, being Section 1 of Chapter 219 of the Acts of the 33d General Assembly; although it assumes that defendant's liability is predicated primarily upon Sec. 4999-a2, a safety appliance act passed by the 29th General Assembly, known as Section 2 of Chapter 149.  The admitted effect of the holding of the majority is that, where the property, machinery or appliance of an employer is defective or out of repair, or where it is the duty of the employer, from the character of the place or the work, to furnish reasonably safe machinery, appliances or place to work, an employee shall not be deemed to have assumed the risk by continuing in the prosecution of the work growing out of any defect of which the employee had knowledge, when the employer also had knowledge, except when, in the usual course of his employment, it was the duty of the employee to make the repairs or remedy the defect, and not then unless the danger from continuing in the employment was imminent and to such an extent that a reasonably prudent man would not have continued with the prosecution of the work.  The last sentence of the act is not considered by the majority, and the fact that the negligence of the defendant in this case may have been a violation of the factory act is apparently regarded as of no importance.  It is largely because of these facts that I am impelled to register a dissent; for the opinion is an authority for the proposition that, no matter what the negligence of the employer, the employee does not assume the risk unless it was the duty of the employee himself to repair the machinery by which he was injured, or remedy the defect, no matter what it may have been, and not then unless the danger was imminent and the hazard so great that a reasonably prudent person would not have continued in the work. Shortly stated, the rule announced by the majority is this:

An employee working about defective machinery, or in any unsafe place, although it may have been his express duty by his contract of employment to make the necessary repairs or remedy the defect, and he is himself guilty not only of breach of contract but also of negligence, may entirely disregard his duty to his employer, fail and neglect to repair the defective machine or to remedy the defect, whatever it may have been, continue to work about and with the defective machine or appliance and still recover from his employer, unless the danger was imminent and so hazardous that a reasonably prudent person would not have continued in the prosecution of the work. I cannot believe that the legislature intended to so change the law as it theretofore existed, and as it now exists in all other matters, as to allow one to thus take advantage of his own wrong and his own failure to do his duty to his employer. Moreover, according to the doctrine of the majority, no matter how imminent the danger or how great the hazard to an employee in continuing to work in a dangerous place or with defective machinery, he does not assume the risk incident thereto. Although he may know it is practically suicidal to continue his work, still he cannot be held to assume the risk, unless it was his duty in the course of his regular employment to make repairs or remedy the defects. Could any greater premium be put upon an employee's negligence? If these be correct propositions of law, then an employee is largely relieved of any duty, and he cannot be held guilty of contributory negligence as a matter of law or even as a fact, for he is acting in obedience to the written law. I cannot believe that the legislature intended any such results. If it did, there was no occasion for the enactment of a workmen's compensation act, and every employee about an industrial plant should refuse to come within its terms; for it is a delusion and a snare. I am convinced that the statute in question will not bear the interpretation placed upon it by the majority.

It is an elementary rule in the construction of statutes

to consider the old law as it stood before the passage of the act, the mischief which the new was designed to remedy, the nature of the remedy and the true reason therefor. This rule is as old as time and has proved a safe guide in the past. What then was the old law before the adoption of any statute upon the subject? In the absence of statute, a master is required only to exercise ordinary care to make a reasonably safe place for his employees to work, to furnish them with reasonably safe machinery and appliances and to use reasonable care in keeping them safe. He is not required to furnish the latest, the best or the most approved machinery or appliances; nor is he bound to keep his place safe. The master has the right to manage and conduct his business according to his own judgment, even though other methods may be safer. As a corollary to this doctrine, it is universally held that a servant or employee, when entering the employ of his master, assumes all the risks which are incident to the employment which are obvious to him or which are discernible by the exercise of ordinary or reasonable care on his part, although the risks might have been obviated by the master. One who is *compos mentis*, in presenting himself for employment undertakes by his contract of employment to assume all the ordinary risks incident to his employment and cannot insist that the employer make any changes in his place of work or in the appliances for doing it, although the employer does undertake to use reasonable care in keeping in repair such appliances as he does use, and also agrees not to submit his employee to hidden dangers of which the employee is not advised and which are not discernible by the use of ordinary care. This is what has been denominated true assumption of risk.

As a part of the same doctrine, it is held that if, as a part of his employment, the employee undertakes to make repairs or to keep the premises in a reasonably safe condition and fails to comply with his contract, he cannot hold his master liable for injuries growing out of the use of dangerous

or defective articles, (1) because he and not the master is at fault, and (2) because he has elected to assume the risk growing out of the use of the dangerous appliance rather than to fulfill his contract with his master and make the repairs. No matter how stated in such circumstances, it is universally held that an injured employee cannot recover if the injury was due to his own failure to repair. *Wahlquist v. Maple Grove Coal & Mining Co.,* 116 Iowa 720; *Stroble v. Chicago, M. & St. P. R. Co.,* 70 Iowa 555. If, however, the master fails in his duty to furnish a reasonably safe place to work or proper tools and appliances or to keep the same in a reasonably safe condition, and the servant becomes aware of the defects and the dangers incident to their use, and, without making protest or complaint, he continues in his master's employment, he is deemed to have assumed the risk incident to the use thereof, to the same extent as if the defects and dangers had existed at the time he entered his master's employment and were assumed as one of the incidents thereof. *Kohn v. McNulta,* (Ohio) 147 U. S. 238 (13 S. Ct. Rep. 298); *Greenleaf v. Dubuque & S. C. R. Co.,* 33 Iowa 52; *Muldowney v. Illinois C. R. Co.,* 39 Iowa 615; *Way v. Illinois C. R. Co.,* 40 Iowa 341; *Lumley v. Caswell,* 47 Iowa 159. But if, upon discovering the defect, the employee makes complaint to the master or his authorized agent, and is promised that repairs will be made, he may rest on that assurance and continue his employment without assuming the risk or being guilty of contributory negligence as a matter of law, unless, to his knowledge as a reasonably prudent man, the hazard in the use of the defective place or appliance is so imminent and the peril so great that a reasonably prudent man would not have encountered it. After a promise by the master to repair, the servant may continue his work for a reasonable time thereafter for reparation to be made, without assuming the risk or being guilty of contributory negligence as a matter of law, unless, as before stated, the hazard is imminent and to do so would be practically suicidal. *Stoutenburgh v. Dow, Gil-*

*man, Hancock Co.,* 82 Iowa 179; *Pieart v. Chicago, R. I. & P. R. Co.,* 82 Iowa 148.

Again, if, without promise of repair, the master, after complaint, assures the servant that the place is safe, the employee is, as a rule, justified in relying on this assurance and does not, as a rule, assume the risk. This latter is assumption of risk in its larger sense. But here again, if a duty devolves upon the servant, in virtue of his employment, to keep the place safe or to make the needed repairs, and he fails of his duty in this respect, he assumes the risk; for he, and not the master, is in default unless the master knows of the defect and danger; but even if he does know and the servant makes no complaint, the master may assume that the servant prefers to assume the risk. It is always to be assumed, when a servant enters the employ of another, that he has the knowledge fitting him for the employment, understands the ordinary hazards connected therewith and is content to assume them; and the same doctrine applies if the defects and dangers become apparent to him as a reasonably prudent man after he has entered upon his employment; for, in the absence of statute, there is nothing contrary to law or public policy in the doctrine of assumption of risk.

So much as to the common law upon the subject, which has been stated in an oracular way, without the citation of numerous authorities. One of the mischiefs of the common law was the right of an employer to use almost any kind of machinery that his interests seemed to dictate, without reference to the life or the safety of his employees; and so not only the Federal Congress, but many, if not all, of the state legislatures, have from time to time passed what have been denominated safety appliance acts, requiring the use of certain machinery or appliances, guards for machinery, pulleys and various other devices for the safety of employees. The same legislative bodies have also passed statutes changing the common-law rules with reference to assumption of risk and contributory negligence of employees—in some states abolish-

ing both doctrines; in others, modifying one or the other, or both. In this jurisdiction, the legislature first attempted to deal with the safety of employees. The first act in this state with reference to the matter dealt with the guarding of machinery, and, so far as material, reads as follows:

"It shall be the duty of the owner, agent, superintendent, or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein shall be properly guarded."

This was passed by the 29th General Assembly and is known as Section 2 of Chapter 149 of the acts of that assembly, and it has not been substantially changed since its enactment. Failure of an employer to comply with this statute has been held to be negligence entitling an injured employee to recover. *McCreery v. Union Roofing & Mfg. Co.,* 143 Iowa 303; *Kirchoff v. Hohnsbehn Creamery Supply Co.,* 148 Iowa 508; *Verlin v. U. S. Gypsum Co.,* 154 Iowa 723. After some wabbling on the subject, this court, without reference to any statutory provision on the subject, finally held that, as assumption of risk would defeat the very purpose of the statute, the ordinary common-law rule upon that subject does not apply in all its aspects. See *Sutton v. Des Moines Bakery Co.,* 135 Iowa 390; *Bromberg v. Evans Laundry Co.,* 134 Iowa 38; *Woolf v. The Nauman Co.,* 128 Iowa 261; *Verlin v. Gypsum Co., supra.* Whether or not contributory negligence would bar the right of an employee, was involved, if not decided in the negative, in one case (see *McCreery* case, *supra*); but it was finally held that the injured employee must show freedom from contributory negligence. *Wheeler v. Sioux Paving Brick Co.,* 162 Iowa 414; *Poli v. Numa Coal*

*Co.,* 149 Iowa 104, 105. I shall revert to this matter again in dealing with another branch of the case.

As the common-law doctrine of assumption of risk hitherto stated was not satisfactory, the 32d General. Assembly passed an act reading as follows:

"In all cases where the property, works, machinery or appliances of an employer are defective or out of repair and the employee has knowledge thereof, and has given written notice to the employer, or to any person authorized to receive and accept such notice, or to any person in the service of the employer and entrusted by him with the duty of seeing that the property, works, machinery or appliances are in proper condition, of the particular defect or want of repair or when the employer or such other person has been notified in writing of such defect or want of repair by any person whose duty it is under the rules of the employer or the laws of the state to inspect such works, machinery or appliances, or any person who is subject to the risk incident to such defect or want of repair; no employee after such notice, shall by reason of remaining in the employment with such knowledge, be deemed to have assumed the risk incident to the danger arising from such defect or want of repair."

This is known as Chapter 181, Acts 32d General Assembly. It changed the previous law as follows: It provides that, if an employee having knowledge of defects gives written notice to his employer, or if such notice is given by any state inspector, the employee shall not, after such notice, be deemed to have assumed the risk incident to the danger, by reason of continuing to work therewith. In other words, no promise of repair by the master is needed. All required is that the employer be given written notice of the defect. Manifestly, no other changes were made by this statute. This was amended by the 33d General Assembly so as to make the statute read:

"In all cases where the property, works, machinery or

appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish reasonably safe machinery, appliances or place to work, the employee shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary, course of his employment it is the duty of such employee to make the repairs, or remedy the defects.   Nor shall the employee under such. conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment; and no contract which restricts liability hereunder shall be legal or binding.''

This is known as Section 4999-a3 of the Supplement of 1913, and is the statute now under consideration.   It is manifest that it changes the prior statute by dispensing with notice to the employer, and also changes, but to a large extent recognizes, the rules of the common law.   The hand that drew the last enactment had a better comprehension of the common law upon the subject of assumption of risk than the one which drew the first statute, and evidently intended to dispense entirely with the necessity of any notice, protest or complaint on the part of the employee where both the employer and employee have knowledge of the defect, and also to get rid of the doctrine that the employee must have secured a promise of repair on the part of the master, in order to justify him in the continuance of the work with defective appliances.   It does not change the rule of the common law where either employer or employee had no knowledge of the defect, and, it will be observed, makes no reference whatever to the safety appliance acts which had, long prior to that time, been placed upon the statute books.   It does specifically refer to cases

where it is the duty of an employer *to furnish reasonably safe machinery, etc.,*—meaning, of course, the common-law obligation,—and then says that, notwithstanding the statute, an employee is still held to have assumed such risks as are incident to his employment,—meaning, of course, the assumption of risk first considered by me in this dissent. It also undertakes to preserve the doctrine that, if it be the duty of the employee to make repairs or remedy defects, he will be held to have assumed the risk if he fails in that duty. It also recognizes the doctrine that in some cases, if not all, an employee will not be justified in continuing his work if the danger is imminent and to such an extent as that a reasonably prudent person would not have continued in the prosecution of the work. The majority say that this limitation applies only to cases where it was the duty of the employee to make the repairs or remedy the defects; but it is my opinion that it applies to all cases, the statement "under such conditions" referring to cases where the employer was under the duty to furnish reasonably safe machinery, etc., and where both employer and employee had knowledge of the defects, and not to a case where it was the duty of the employee to make repairs or remedy the defects. The very term itself *"under such conditions"* manifestly refers not to duty, but to conditions. If not, why use the plural in expressing the thought? Statutes like this which are remedial in character must be construed with reference to the common law and made to fit therein and harmonize therewith. To my mind, there is no doubt or ambiguity in the language used or in the interpretation to be given. At common law, an employee whose duty it was to make repairs or remedy defects could not be heard to say, "Although I was at fault in not doing my duty, still I did not assume the risk and I will place the responsibility upon my employer." Neither could he, even if he were in a position ordinarily to say that he did not assume the risk, subject himself to imminent danger and assume hazards which a reasonably prudent person would not have

subjected himself to. This statute was not made to penalize an employer, but to modify the doctrine of assumption of risk, preserving some of its features,—obviously, those which did not impose any hardship on the employee. Surely, if it is the duty of an employee to make repairs and remedy defects, he should not be heard to say that "Although I was in fault, the blame should be shouldered entirely upon my employer." Again, it is not in the interest of public policy to make one indifferent to his own life. Under the construction placed upon the statute by the majority, it makes no difference how imminent the danger or how great the peril, an employee, unless under a duty to make the repairs or remedy defects, does not assume the risks incident to the use of defective appliances or of dangerous places to work. He may still go ahead with his work, although he knows that it is suicidal to do so, and still hold his master liable.

To my mind it is clear that, under this statute, an employee does assume all such risks as are incident to his employment. He does assume all risks, if that term may properly be so used, if it was his duty to make the repairs or remedy the defects which caused his injury; and he cannot be heard to complain if, with knowledge of defects and dangers which are imminently dangerous and hazardous, so much so that no reasonably prudent man would have submitted to them, he continues in his work with the dangerous machine or appliance or in a dangerous place. This construction harmonizes the statute with the common law and was manifestly what the legislature had in mind. A careful reading of the statute, with reference to its proper grammatical construction, surely shows that an employee whose duty it is to make repairs or remedy defects cannot complain of his master for not doing the things which the servant himself has undertaken to perform; nor should he be allowed to take upon himself hazards to which the law says he should not subject himself and then complain of the master for his wrongdoing. As already stated, such a rule is not in the interest of public

policy. This construction, and this only, harmonizes the statute with the common law and comports with the growth of the law upon the subject. I shall not take up the statutes with reference to contributory negligence, for they are not involved in this case. The only ones which might apply were passed after this case was tried and are not applicable to it. But see Code Supplement, 1913, Section 2071, and Supplemental Supplement, 1915, Section 3593-a. It is enough to say that the case was submitted on the theory that plaintiff was required to negative contributory negligence.

II. It is said, however, that this case falls under the safety appliance act first quoted, and that assumption of risk was no defense, under the doctrine of *Poli v. Numa Coal Co., supra; Winn v. Town of Anthon,* 168 Iowa 699; *Woodworth v. Iowa C. R. Co.,* 170 Iowa 697; *Wheeler v. Sioux Paving Brick Co., supra; Verlin v. Gypsum Co., supra; Rhodes v. Des Moines, I. F. & N. R. Co.,* 139 Iowa 327. Had the case been tried upon that theory, I would be inclined to agree with counsel that, notwithstanding the statute in question which makes no reference to safety appliance acts, the doctrine of assumption of risk is not in the case. But the case was not tried on this theory. It was submitted as if Section 4999-a3, Supplement to the Code, 1913, applied; and the sole controversy on this appeal is whether or not the trial court correctly interpreted that statute. I shall not, therefore, take any more time with this aspect of the case than to say that it will be time enough to consider the matter when it properly arises. The majority do not attempt to sustain the judgment on this theory, and my dissent applies not to the result alone, but to the reasoning on which the result is reached.

Assumption of risk, as pointed out in the decisions already cited, is quite a different thing from contributory negligence, and an instruction on the latter subject, even if correct as a matter of law, does not cure an error in instructing or failing to instruct on assumption of risk. This is pointed out in the cases already cited, and also in *Miller v. White Bronze*

*Monument Co.*, 141 Iowa 701. These cases so well point out the distinction between the two that I need not elaborate. The instruction asked by defendant on assumption of risk should have been given, and the one given by the court on contributory negligence did not cure the defect. Although a little out of order, I have thought it advisable here to refer to a few authorities sustaining the view that a statute should be construed in the light of the common law. It is well settled that whatever is newly created by statute draws to itself the same qualities as if it had existed at the common law and is to be interpreted in the light thereof. In other words, it is to be construed in harmony with their policy and with the common law. See Bishop on Written Laws, Section 139 *et seq.;* 36 Cyc. 1145, and cases cited.

For the reason stated, I am impelled to dissent both from the argument and the conclusion of the majority.