WALTER PETERSEN, Appellant, v. MCCARTHY IMPROVEMENT
COMPANY, Appellee.

**MASTER AND SERVANT**: Tools, Machinery and Appliances—Defective Material—Evidence.  Evidence reviewed, and held sufficient to sustain a finding that the master's nondelegable duty to furnish to his servant reasonably safe tools was violated by furnishing a carrying hook made of such soft metal that the same became easily dulled and would slip from the timbers which the servant was handling.

**MASTER AND SERVANT**: Tools, Machinery and Appliances—Choice Between Safe and Unsafe Tools.  A servant injured by reason of an unsafe tool may not be defeated in his demand for damages by a showing that the master had other safe tools about the premises, *unless such safe tools were available for use by him.*

**MASTER AND SERVANT**: Negligence—Method of Doing Work—Impracticable Method.  A servant injured through the use of unsafe tools may not be defeated in his action for damages because he did not employ another way which the evidence reveals was impracticable.

**MASTER AND SERVANT**: Assumption of Risk—Unsafe Tools—Factory Act.  The plea of assumption of risk in the use of unsafe tools is no longer available to an employer unless the employee is under a duty to repair, and not even then unless the danger from use is imminently perilous.  So *held* in the use of a defective carrying hook.

**NEGLIGENCE**: Proximate Cause—Neutralizing Negligence of Master.  Due care by a servant—freedom from contributory negligence—may demonstrate that the negligence of the master was not the proximate cause of the injury, and thus defeat the employee.

   PRINCIPLE APPLIED:  For carrying heavy timbers, the master negligently furnished grappling hooks with points of such inferior material that they would, to the knowledge of the employee, become dull after handling from 3 to 18 timbers, and would then slip and drop the timber. *But the hooks were perfectly safe when freshly sharpened.* They had been so sharpened just before the employee started to use them.  On the occasion in question, the hooks slipped from the *second* timber handled, and the employee was injured. *Held*, the employee had demonstrated that he was in

no wise guilty of contributory negligence, and had equally demonstrated that the negligence of the master was not the proximate cause of the injury.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS, Judge.

THURSDAY, MARCH 20, 1916.

ACTION for damages resulted in a directed verdict for defendant. From judgment thereon, the plaintiff appeals.—*Affirmed.*

*Fred Vollmer* and *F. A. Cooper,* for appellant.

*Lane & Waterman,* for appellee.

LADD, J.—I. The defendant was engaged in constructing the Purity Oats Building in Davenport. It was several stories high, and 144 feet long by 72 feet wide. Its outside walls were of brick, and on the inside, uprights were erected about 14 feet apart, on which rested girders, 12 inches by 14 inches, running across the building. Joists 6 inches by 12 inches had been placed with ends in the stirrups attached to the girders about 3 feet apart in 6 or 8 spaces; and in the morning of July 5, 1913, the superintendent of the work sent up four laborers, and instructed plaintiff to "set some of those joists in." The plaintiff was foreman of the carpenters, some 8 or 10 in number, but was directed by the superintendent "to use laborers so as to save money," their wages being less than half those paid to carpenters. The joists were cut down by Hurley, one of the carpenters, so as to be of length and depth to drop into the stirrups at either end. After this was done, a rope was tied around each end, two laborers on each of opposite girders pulled it to the second story, and without accident, set in stirrups 6 inches from the wall. One of the laborers, owing

1. MASTER AND SERVANT: tools, machinery and appliances: defective material: evidence.

to nervousness, left for another to work in his stead; where-
upon plaintiff took his place in order to keep the work going,
and second joist was lifted by ropes and placed on that pre-
viously set and the ropes removed.  The two men on each
end then took a lay hook and dropped it over the joist, catch-
ing the points on either side, and walked out on the girders,
and, as plaintiff came nearer the stirrup, he leaned over,
preparatory to letting the end in such stirrup, when the
other end slipped from the hook held by the two men on the
opposite girder and lacked a little of having reached the stir-
rup, and as the end fell to the floor below, plaintiff lost his
balance and jumped down and was injured.  The negligence
charged is that defendant did not exercise reasonable care in
furnishing suitable appliances with which to do the work.  The
long hook consisted of two circular prongs hung on a swivel
in a band around a handle.  The lower ends were turned in,
with a point slanting upward.  The handle was long enough
so that a man could take hold at each end and carry whatever
the points might be caught into.  The evidence tended to show
that there were about a dozen of these hooks furnished, only
two of which had steel points and were suitable for the pur-
pose of handling timber.  The points on the others were of
poor material, and soft, and, after being sharpened, would
get dull from using 4 or 5 times, as testified by Hurley, or
18 or 20, as testified by plaintiff, and would bend over.  Lage
testified that the hooks when sharpened "would not stay
sharp.  The material was no good and it didn't hold.  I com-
plained to Gleason as to the condition of the hooks."  Peter-
sen testified:

"The hooks other than the one pair were not good: they
didn't have material in them to hold, they would slip off.
They would pull apart.  .   .   .   We would file them up and
they would not stay sharp.  There was not good stuff in them
or they would stay sharp."

From this evidence, the jury might have found that the
hooks other than two with blue handles and steel points were

neither safe nor suitable for the purpose for which furnished.
The rule is "elementary that the employer is required to exer-
cise reasonable care in furnishing appliances which, if handled
with ordinary prudence, can be safely used by the employee
in the performance of the task assigned him, and he is respon-
sible therefor whether this duty is performed by himself or
through another." *Funk v. Leonard Construction Co.,* 159
Iowa 320. Or, as said in *Brann v. Chicago, R. I. & P. R. Co.*
53 Iowa 595: The defendant was "bound to use ordinary care
in the selection of machinery and appliances, so as not to sub-
ject the employees to unreasonable danger, that must follow
from insufficient tools and appliances, or which are out of
repair, and, therefore, insufficient for the purpose intended."

II. It is contended that, as two hooks were suitable and
safe, and these might have been selected, the defendant was
not responsible for the choice of those which were unsafe. See
*Funk v. Leonard Construction Co., supra.*

2. MASTER AND SERVANT: tools, machinery and appliances: choice between safe and unsafe tools.
As appears, however, the two hooks were not
adequate for the requirements in performing
the work. Hurley, before handing those used,
searched for the steel-pointed hooks and was
unable to find them. He testified:

"I looked around for them on the first floor and couldn't
find them. . . . We usually kept them out at the saw
unloading cars. I do not know where they were using them.
I didn't find them. Were usually kept out at the saw on the
south side and sometimes on the other building. . . .
They are usually kept in the tool shed. I don't know whether
they picked them up at night or not. We had laid one whole
floor of joists and a part of the second floor before Petersen
got hurt. We went on with these hooks and laid all the other
floors. . . . Had occasion just before the accident to
look for those blue handled ones (steel pointed). . . .
Petersen said 'Get a couple of hooks,' and I went to get them.
Didn't inquire of anybody where they were. Looked around
and picked up two hooks and sent them up. . . . The

class of men that were setting joists were laborers. Did not use laborers in this class of work after Petersen got hurt. . . . Carpenters set the joists in the stirrups," as they demanded that they be allowed to do so.

Lage testified that the steel-pointed hooks were "down at the big timbers, and they were using them for lifting the big timbers up on the bench and roll and cut them their length;" at the time Petersen was hurt that six laborers and one carpenter were there engaged in cutting 12-inch by 14-inch girders. From this evidence, the jury might have found that the choice of safe and suitable hooks was not available to Petersen as foreman or those working under his direction, and that the only hooks available were those of the kind actually made use of.

III.   Counsel for appellee argue that, if suitable hooks were not furnished, ropes should have been used. The evidence was such as to show that ropes might have been impracticable for the purpose of placing the joist. But Hurley testified:

3. MASTER AND SERVANT: negligence: method of doing work: impracticable method.

"The joist had to be set with hooks; could not be set with a rope, because, if you put a rope on, you would have to tie it back a foot from the end anyhow, and you start walking,—there are three feet between centers, and you walk on a 12-inch joist and you are pulling this way on your ropes. If you tie it back a foot from the end, you can't get them in your stirrups. They are always pulling against each other. If you put on a hook, you can catch right within three inches from the end; right in close and set it down, and in order to get it in the stirrup, take the hook off and hit it with your foot. Know of no other practical way that they could have been set into the stirrups. We set down all with hooks. . . . If you take a rope to set them, two men can't walk on a girder twelve inches wide, because your rope would be out too far and you would be pulling against each other and have to lift them pretty high—a foot over the stirrup—before you started in,

and the weight of them, I don't believe four men could put them in with a rope."

Lage's and Petersen's testimony was substantially the same. The record was such that the jury might have found that neither the use of rope nor a derrick (as the first floor was covered with brick) would have been practicable for the purpose of placing the joist in the stirrups. If, then, such were the conclusion, and the hooks from which choice must have been made were defective, the defendant might have been found negligent, as alleged in the petition. .

IV. Appellee suggests that in any event, as plaintiff knew the defective condition of the hooks, he assumed the risk of injury in using them. This might have been so but for the enactment of Section 4999-a 3, Code Supp., 1913. A master may no longer shield his negligence by casting the burden on his employe to ascertain at his peril whether he can safely take the chance of working, notwithstanding such negligence, save where it is the duty of the employe to remedy the defect; and not even then unless the danger is imminent, and such that a prudent person would not have continued in the work. *Correll v. Williams & Hunting Co.*, 173 Iowa 571. This is not such a case, and the doctrine of assumption of risk was not available to defendant.

**4. MASTER AND SERVANT: assumption of risk: unsafe tools: Factory Act.**

V. The close question in the case is whether plaintiff was guilty of contributory negligence. He was fully aware of the condition of the hooks defendant had furnished with which to place the joists. He had examined the hooks that morning, and testified that "they were fixed up pretty good and were in pretty good shape. . . . They looked as if they were in good condition to work." They had been filed shortly before being used. The joist being placed was the first or second after the hooks had been sharpened. He testified further:

**5. NEGLIGENCE: proximate cause: neutralizing negligence of master.**

"A few good heavy timbers would dull them up. On

such timbers as the joist they would last longer. About 20, I guess. You would have to sharpen them if you wanted to be on the safe side. . . . If you file them every 20 joists you lifted, you would have to file them 150 or 200 times. I didn't file them every 20 joists. . . . They would stay sharp about 18 joists. . . . Safety required that the hooks be sharpened.''

He testified that setting these joists was carpenters' work; that the rules of the carpenters' union forbade its being done by laborers; that carpenters might drive the points of the hook in with a hammer, but that the use of a hammer on a building by a laborer was not allowed by such rules; that laborers might have used hammers, but were not supposed to; that the hooks are supposed to hold without driving them in; that he knew they were defective, but did not tell them to drive the points in; that he could have taken a hammer and done so himself, but thought this was not needed because he thought they would sure hold; that he would have hammered them had he supposed they would not hold. Other witnesses testified that the hooks, after being sharpened, would hold for three or four joists. From this, the jury might have found that plaintiff was not negligent in using the hooks immediately after being sharpened, for carrying the second joist, without hammering the points of the hook in or causing others to do so. The necessary result of this conclusion, however, is to exonerate the defendant; for if the hooks, when freshly sharpened, were safe for use,—and that they were is undisputed,— the alleged negligence of defendant in furnishing those of poor material could not have been the proximate cause of the timber's falling. In other words, in proving plaintiff to have been free from contributory negligence, the evidence exonerated defendant, by showing that the hooks, though defective when furnished, had been made suitable for the purpose for which plaintiff was using them; and therefore that the falling of the timber was not in consequence of any fault on the part of defendant. The hook must have slipped from the timber,

then, owing to something done or omitted by the laborers carrying that end of the timber; but if this constituted negligence, it was that of a fellow servant, and for this reason, not the basis of an action against the common employer. *Forney v. Mardis,* 155 Iowa 667.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.