RAY ERICKSON, appellee, v. EARL ERICKSON, appellant, and ERNEST ERICKSON, defendant.

No. 49648.

(Reported in 94 N.W.2d 728)

FEBRUARY 10, 1959.

Linnan & Lynch, of Algona, and H. A. Stoebe, of Humboldt, for appellant and defendant.

Garfield, Baker & Miller, of Humboldt, for appellee.

PETERSON, J.—Plaintiff and defendants are farmers living in Humboldt County. They are brothers. On December 13, 1955, defendant telephoned plaintiff stating that he was going to a cattle sale in Nebraska and if his wife needed any help with the chores while he was gone he would like to have him take care of it. Plaintiff agreed to do so. On December 14 Mrs. Erickson called Ray and said the hog feeders were empty and asked him to come over and fill them. About 10:30 a. m. of December 14 plaintiff, Ray, together with his brother Ansel, came to the Earl Erickson place to perform the chores.

There are six Erickson brothers farming in that area and they had either purchased or built some special wagons in which to mix hog feeds and unload them into the hog feeders. The wagons were attached to a tractor and through extensions and a universal joint connection the power of the tractor mixed and elevated the feed.

Ray and Ansel started the tractor and attached same to the feeder wagon and proceeded to the hog yard. Ray had to get up on the wagon tongue between the tractor and the wagon in order

to pull the lever which would let the feed down from the wagon into the hog feeder. When he stood on the wagon tongue the cuff of his trousers was caught by some bolts extending from attached plates. The plates were going at the rate of about 350 revolutions per minute and it tore his trousers away from his body, wrapped them around the connecting rod and threw Ray violently to the ground. He called to Ansel to stop the machinery, which he did, but the damage had been done. Ray was very seriously injured and was not able to work for a year, and has not yet fully recovered. He had $5071.48 hospital and medical expense.

The case was tried to the court without a jury. Judgment was rendered against defendant Earl Erickson for $12,571.48. The case was dismissed as to Ernest Erickson as he had no interest in the farming operations. Defendant has appealed.

Appellant assigns six errors in the form of six reasons for reversal, but they can be considered under three legal propositions; he alleges the court erred: 1. In establishing the relationship of employer and employee between plaintiff and defendant. 2. In holding that defendant was negligent. 3. In holding plaintiff did not assume the risk.

I. Appellant contends there was no relationship of employer and employee; that the chores plaintiff did for defendant were only in the nature of casual service; they were rendered by one brother to the other as a matter of courtesy.

The record does not sustain this contention. The evidence shows without conflict that the two brothers traded services back and forth throughout the year. Each brother would keep track of the time he worked for the other brother and at the end of the year, if there was any difference in the hours between them payment would be made for such difference. The testimony of both brothers is clear that payment was made for the services rendered by plaintiff to defendant in connection with the chores which were taken care of by plaintiff at the time the accident occurred.

Defendant Earl testified: "Q. You have heretofore testified that Ray worked for you on a whole day or job basis—temporary basis, at least since 1952; on those occasions did you or did you not pay Ray for his services? A. Yes I have. * * * On the

occasions that Ray did chores for me he was paid by me cash. * * * Q. Did you pay Ray for this work that day? A. Yes."

Plaintiff testified: "I was to keep tab of the hours I worked for him. That was the agreement. He told me to keep tab of the hours I worked and then he said, 'I'll settle with you', which he did."

Payment for the services rendered is one test as to the existence of the relationship of employer and employee. Another test is whether or not the person for whom the work was done gave instructions as to the work, or had control of the services of the employee. Bell v. Brown, 214 Iowa 370, 239 N.W. 785; Johnson v. Kinney, 232 Iowa 1016, 7 N.W.2d 188, 144 A. L. R. 997.

Even where there is no specific arrangement for pay, but there is an exchange of work between farmers and an agreement that under such conditions one farmer performs services for the other, we have held the relationship of master and servant is present. Napier v. Patterson, 198 Iowa 257, 196 N.W. 73; Porter v. Decker, 222 Iowa 1109, 270 N.W. 897; Lembke v. Fritz, 223 Iowa 261, 272 N.W. 300; Ganzhorn v. Reep, 234 Iowa 495, 12 N.W.2d 154.

In the case at bar the evidence not only shows the exchange of work between the brothers, but shows the further fact that payment was made as to any difference.

With reference to defendant instructing plaintiff it appears without dispute that defendant telephoned plaintiff on the day before the accident happened and asked him if he would come and do the chores if his wife called him. He said he would. The wife did call, and when plaintiff came to defendant's farm she gave instructions, on behalf of her husband, as to the services to be rendered. The court correctly held that an employer-and-employee relationship existed.

II. Defendant contends that no negligence should be charged against him, as plaintiff knew the tractor and wagon unloader arrangement, having used one for ten years. This is more in the nature of a contributory negligence allegation than one of absence of negligence.

In a master-and-servant relationship, the matter of contributory negligence is only effective as mitigation of damages.

496

R. C. P. 97. Oestereich v. Leslie, 212 Iowa 105, 234 N.W. 229; Morse v. Century Cab Co., 230 Iowa 443, 297 N.W. 877, 134 A. L. R. 635; Band v. Reinke, 230 Iowa 515, 298 N.W. 865. In such cases it is not necessary that the servant plead freedom from contributory negligence. It is an affirmative defense. Appellant raises no question as to the amount of the judgment, and does not plead contributory negligence.

██ ██ To arrive at a conclusion with reference to this alleged error it is necessary that we state the facts in some detail. The six Erickson brothers had five of the wagon unloaders. They had purchased three ready-made, and had erected two themselves on the exact basis of the wagons purchased. They had been using them for many years. This included plaintiff who had one on his farm.

The wagon unloader is a "V" shaped box, with an elevator attachment at the back and an auger extending lengthwise through the bottom of the box. When power is applied, the auger revolves, mixing the grain and protein, and forcing it through the elevator into the feeder bin. At the front of the wagon is a large lever which is operated by hand, the purpose of which is to release the feed. The front end of the auger is attached to a universal joint and immediately following the universal joint are two flat circular discs fastened together by means of shear bolts. One disc is attached to the universal joint; the other disc is connected with a shaft which telescopes into the power take-off shaft of the tractor. This power take-off shaft is connected to the tractor by means of a universal joint and gearbox. The wagon unloader is constructed with a triangular metal tongue, which is approximately eight or ten inches below the power shaft and is fastened to the drawbar by means of a large bolt. The power take-off is constructed in the back of the tractor behind and below the seat. When the tractor is stationary and the motor in the tractor is idling, the power take-off can be applied by pulling the lever. The power shaft and auger then revolve, forcing the feed from the wagon box into the elevator and thence into the feedbin.

The difficulty arose because of the bolts which fastened together the two flat circular discs. When the wagons were purchased they came with a roundheaded bolt connecting the two

discs and both the head of the bolt and the nut on the other end were flush with the discs. Under those circumstances there was no element of danger involved in the bolts. However, the standard bolts had sheared off and it became necessary for defendant to substitute new bolts. He did not have any bolts with the rounded heads and fitting flush outside the two discs, so he substituted what he had, which were called stove bolts. They were longer than the normal bolts and he was not able to place the bolts in the same manner as originally placed. He had to place them in the opposite direction. This caused the ends of the bolts to extend out from one-half to three-quarters inch beyond the nuts.

Plaintiff stood on the triangular wagon tongue. He grabbed the lever on the front of the wagon with both hands, pulling the lever toward him to release the feed into the feedbin. At the same time, he called to Ansel to apply the power. As the power was being applied and the feed was gradually being unloaded from the wagon, plaintiff became entangled in the power shaft.

There is no question about what actually happened. The real facts of the situation are shown from the evidence of Ernest Erickson. He was the brother who had gone with defendant to Nebraska, but who came home about noon of the day of the accident. Ernest testified:

"I did go out there about three or four o'clock in the afternoon. I observed the clothes about the power take-off shaft. There were clothes around the power take-off shaft, some right next to the wagon behind the knuckle and running up to about where the two bars go together. I removed the clothing. It was wrapped around the shaft about seven times. Part of the clothing was underneath the other cloth. When I started unwrapping the loose end was toward the tractor. When I started to unwind, I thought probably I could pull it over. The only way I could get it off was to go around the power take-off shaft. I counted the times until I came to the knuckle in there. I could see where it was caught. It was caught in the cuff of his overalls or coveralls. The cuff was caught on the bolts or the shear pins. * * * When I got down to there that was the end of the unwinding."

Appellant contends plaintiff was so familiar with these wagons that he should have seen the bolts extending from the

plates and if so he could have avoided the danger. Plaintiff's testimony as to this situation is as follows:

"Just before the accident or at any time before I arrived at my brother Earl's farm on December 14, 1955, I did not observe these long bolts that held the two plates together. I had never seen long bolts in that wagon before in that location. We have a similar unloading wagon or trailer. I know how these bolts are normally placed to hold those discs together. They are placed with the roundhead to the front and the burr nut to the wagon. I have never seen any of these wagons, either this one or mine, in any other way."

There is an obligation on the master to furnish the servant with a safe place to work. This is both statutory and by judicial pronouncement. Section 88.14, 1954 Iowa Code; Bell v. Brown and Johnson v. Kinney, both supra; O'Reagan v. Daniels, 241 Iowa 1199, 44 N.W.2d 666; Peterson v. McCarthy Improvement Co., 175 Iowa 85, 156 N.W. 801; Lang v. Hedrick, 229 Iowa 766, 295 N.W. 107.

In O'Reagan v. Daniels, supra, at page 1205 of 241 Iowa we said: "It is a rule of common law and has been the settled rule of this court that the master or employer must use reasonable care and diligence to provide and maintain a reasonably safe place for his employees to work * * * [cases cited]. And the same care and diligence is required of the employer to provide and maintain reasonably safe *appliances, machinery* and *tools* with which to do the work." (Emphasis ours.)

There is substantial evidence defendant was negligent in not furnishing plaintiff with a safe place to perform the work.

 III. In his answer defendant alleged plaintiff had assumed the risk with reference to the work in which he was engaged. This is an affirmative defense and was so considered by defendant in making the allegation in his answer. The burden of proof is upon defendant as to this defense. Stingley v. Crawford, 219 Iowa 509, 258 N.W. 316; Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875; 38 Am. Jur., Negligence, section 174.

The questions of master-and-servant relationship and assumption of risk have had legislative attention. Section 88.14, 1954 Iowa Code, provides as follows:

"In all cases where the property, works, machinery, or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery, or appliances to furnish reasonably safe machinery, appliances, or place to work, the employee shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment; and no contract which restricts liability hereunder shall be legal or binding."

Appellant's contention is that plaintiff was thoroughly familiar with the unloading wagons. The difficulty with this contention is that defendant had made a change in the wagon on his premises. About three weeks before the accident the regular bolt and nut had been sheared from the plates and it became necessary for him to replace them, all as shown in detail in Division II. Plaintiff had not used this particular unloading wagon between the time of this change and the time of the accident. He was familiar with the nuts and bolts commonly used on the five wagons, but was not familiar with this new arrangement prepared by defendant.

If the servant did not know the peril to which he was exposed the doctrine of assumption of risk does not apply. Mace v. H. A. Boedker & Co., 127 Iowa 721, 104 N.W. 475; Nikolas v. Kirner, 247 Iowa 231, 73 N.W.2d 7; O'Reagan v. Daniels and Johnson v. Kinney, both supra; Correll v. Williams & Hunting Co., 173 Iowa 571, 155 N.W. 982, Ann. Cas. 1918A 117; Bell v. Brown, supra.

Johnson v. Kinney, supra, is a farm laborer case. Plaintiff was working with two other fellow employees in sawing wood. After they had worked for about three hours the other employee

stated they were finished. He asked plaintiff to shut off the power on the tractor and as he was pulling his hand back his mitten caught in the power take-off shaft which was still revolving very fast, injuring his right hand and arm.

In addition to consideration of the question of defendant's negligence the question of assumption of risk was considered. The court said (pages 1019, 1020 of 232 Iowa) : "The sole ground of negligence alleged by appellee or submitted to the jury was failure to provide reasonably safe machinery in negligently failing to furnish a guard for the shaft in question. * * * If appellants were negligent in the respect charged, appellee did not assume the risk therefrom by continuing in the work unless in the usual course of his employment it was his duty to remedy the defect, and even if such were his duty, he assumed no risk therefrom unless the danger was imminent so that a reasonably prudent person would not continue in the work. * * * It conclusively appears he was under no such duty. The court therefore properly withdrew from the jury the defense of assumption of risk."

In O'Reagan v. Daniels, supra, plaintiff was engaged in farm labor for defendant. The work was the placing of baled hay in the haymow. Plaintiff was doing the work in the haymow and as the bales were elevated to the door it was the duty of plaintiff to take the bales from the fork and place them in the proper place in the mow. The rope on the fork which was carrying the bales continuously became twisted. There had been trouble about the rope before and defendant had tried to cure the twisting by stretching the rope, but had been unsuccessful. In the process of untwisting, on one occasion, the rope and loaded fork suddenly whirled against plaintiff and knocked him from the haymow. He was seriously injured.

On the same day plaintiff was injured defendant replaced the rope. Plaintiff was an experienced farm laborer. The court had directed a verdict against plaintiff, partially on the ground that plaintiff assumed the risk attendant upon working at the place and using the appliances furnished by defendant. We said (page 1207 of 241 Iowa) : "It is our conclusion that under the evidence that issue should also have been submitted to the jury and that the court erred in failing to do so."

■ In the case at bar, since the case was tried to the court it is not too important whether the court decided in favor of plaintiff as to assumption of risk as a question of law or as a question of fact. In its conclusions of law the court said: "That under Code section 88.14 the plaintiff did not assume the burden of risk nor did he waive the defendant's negligence." We agree with this conclusion.

■ IV. Since this case was tried to the court its findings are the same as the decision of a jury. Rule 334, Rules of Civil Procedure. If there is substantial evidence to sustain the findings of fact by the court such findings are binding on this court. Hull-Dobbs Motor Co. v. Associates Discount Corp., 241 Iowa 1365, 44 N.W.2d 403; Weber v. Hansen, 241 Iowa 904, 43 NW.2d 766; Augusta v. Jensen, 241 Iowa 697, 42 N.W.2d 383.

There was conflict in the evidence. The form of it was that a few weeks after the accident the statements of plaintiff and his brother Ansel had been taken privately by a court reporter. There were some variations between the statements made by the plaintiff at that time and his testimony at the time of the trial. Defendant laid the proper foundation and offered the statements in evidence for the purpose of impeaching plaintiff's testimony. The court in its findings and conclusions of law made reference to this situation and stated concerning plaintiff's variance in testimony: "But too much credence should not be given to them [his statements to the reporter] because of his physical condition at that time." At any rate, the court's findings of fact are a finality as far as this court is concerned.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.