Joseph **BAUMLER** and Natalie Baumler, Appellees,

v.

Jack **HEMESATH** and Karen Hemesath, Appellants.

Nos. 93–1560.

Supreme Court of Iowa.

July 19, 1995.

Darrell J. Isaacson of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., Mason City, for appellants.

Dale L. Putnam of Putnam & Strand Law Office, Decorah, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Plaintiff Joseph Baumler brought this action against his employers, defendants Jack and Karen Hemesath, alleging that while working on their farm he sustained injuries as a result of their negligent failure to maintain a safe working area and negligent failure to warn. The Hemesaths now appeal from a jury verdict for Baumler and his wife contending: (1) the tire rut into which Baumler fell was an open and obvious danger; (2) failure to warn should not have been submitted to the jury where Baumler had actual and superior knowledge of the danger; (3) their motion for new trial was improperly denied because the verdict was not supported by substantial evidence and erroneous evidentiary rulings denied them a fair trial; (4) the district court erred in precluding evidence of insurance-paid medical bills; and (5) the district court erred in setting the interest rate for past damages pursuant to Iowa Code chapter 535 (1993) rather than chapter 668.

Baumlers cross-appeal contending the interest rate for future damages should also have been set pursuant to Iowa Code section 535.3, not section 668.13. We affirm in part and reverse in part on the appeal, and reverse on the cross-appeal, remanding for a corrected judgment.

I. *Background Facts and Proceedings.*

Jack and Karen Hemesath operated a dairy farm in Winneshiek County, Iowa. They employed their son-in-law, Joseph Baumler, as a farmhand. Baumler twice injured his back while working on the Hemesaths' farm, first in May 1991 when he fell off a motorcycle while rounding up cows, and again in December 1991 when he slipped in a tractor tire rut while helping remove manure from a holding pit.

In July 1992, Baumler sued Hemesaths alleging the motorcycle accident resulted from Hemesaths' negligent failure to maintain safe equipment and failure to warn him of its unsafe condition. Baumler's wife, Natalie, sought damages for loss of consortium. A year later, the district court granted Baumlers leave to amend their petition to allege that Hemesaths were also negligent in failing to maintain a safe working environment and in not warning Baumler of the dangers of the work area, which resulted in his slip in the tire rut.

The Baumlers filed an application for adjudication of law points in which they asked the court to determine whether Iowa Rule of Civil Procedure 97 or Iowa Code chapter 668 applies when an employee is injured in the course of employment. The district court concluded that rule 97 governed Baumlers' negligence claims. Consequently, the court granted a motion in limine to exclude evidence that Hemesaths' insurance paid for some of Baumler's medical bills.

The district court also overruled Hemesaths' motion to exclude evidence concerning seizures suffered by two of Baumlers' children. The court found such evidence relevant to the Baumlers' claim for damages.

The case proceeded to trial. The jury found the Hemesaths negligent for the May 1991 motorcycle incident but decided their negligence was not a proximate cause of Baumler's injury. The Hemesaths' negligence was found to be a proximate cause of Baumler's December 1991 fall in the tire rut. The jury awarded Baumler damages of $163,290, including past medical expenses of $7790 and future medical expenses of $5000.

Following trial, Hemesaths moved to modify the judgment, for judgment notwithstanding the verdict, and for a new trial. The court denied all motions. This appeal by

Hemesaths, and cross-appeal by Baumler, followed.

## II. *Issues on Appeal.*

■ A. *Directed verdict.* The Hemesaths claim the trial court erred in refusing to direct a defense verdict because the tire rut in which Baumler fell was open and obvious and did not create such an unreasonable risk of harm as to compel a warning. Our review of the court's ruling on such motions is well settled:

[W]here no substantial evidence exists to support each element of a plaintiff's claim, directed verdict or judgment n.o.v. is proper. Substantial evidence is that which a "reasonable mind would accept as adequate to reach a conclusion." Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury. The trial court must consider the evidence in a light most favorable to the nonmoving party. On appeal, we consider the evidence in a way most favorable to upholding the verdict.

*Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 873 (Iowa 1989) (citations omitted).

■ Baumler's status as an employee made him Hemesaths' business invitee. *Konicek v. Loomis Bros.,* 457 N.W.2d 614, 618 (Iowa 1990). Thus Hemesaths, as owners of land, were under a duty of care to keep the premises in a reasonable condition. *Id.; accord Schnoor v. Deitchler,* 482 N.W.2d 913, 916–17 (Iowa 1992). This duty requires the landowner to use reasonable care to ascertain the actual condition of the premises. The duty also requires making the area reasonably safe or giving warning of the actual condition or risk involved. *Konicek,* 457 N.W.2d at 618.

■ A landowner, however, is not liable when the injuries sustained by a business invitee are caused by a known or obvious danger. *Schnoor,* 482 N.W.2d at 917; *Konicek,* 457 N.W.2d at 618. An obvious danger means that both the condition and the risk are apparent to, and would be recognized by, a reasonably prudent person. *Konicek,* 457 N.W.2d at 618.

■ According to testimony at trial, the tractor rut presented an open and obvious risk of which Baumler was aware. Furthermore, Baumler was an experienced farm worker knowledgeable of the possible dangers present in working around a slippery twelve-inch-wide, twelve-inch-deep rut. These facts, however, do not automatically relieve the Hemesaths of their duty towards him. As we noted in *Konicek,* a possessor of land will not always be relieved of liability for injuries caused by a known and obvious danger. *Konicek,* 457 N.W.2d at 618. If the landowner can and should anticipate that the dangerous condition will cause physical harm to the business invitee despite its known or obvious danger, the possessor still owes the invitee a duty of care. *Id.* (citing Restatement (Second) of Torts § 343A, cmt. b). Under these circumstances, the owner must either warn the invitee or make the condition reasonably safe. *Id.*

The record shows that Hemesaths were aware of the ruts before Baumler's accident. Jack Hemesath's son, Russell, advised Jack of the danger of the ruts and asked him to fill them with gravel. While working around similarly deep ruts the year before, Jack had spread gravel in them to minimize the danger. Testimony at trial also revealed that another of Jack Hemesath's sons, Douglas, had slipped in the ruts prior to Baumler's accident.

It appears from this proof that Hemesaths could have anticipated the dangerousness of the condition and the safety risk it posed for their employees. However, they gave no warning to Baumler nor was any effort made to minimize the hazard. Under this state of the record, a reasonable jury could find that the Hemesaths acted negligently toward Baumler. We therefore affirm the district court's decision to deny Hemesaths' motion for directed verdict.

■ B. *Failure to warn.* The Hemesaths also argue the trial court erred in submitting failure to warn as a separate specification of negligence. The duty to warn is dependent upon superior knowledge and arises when one may reasonably foresee danger of injury or damage to one less

knowledgeable unless forewarned of the danger. *Krueger v. Noel,* 318 N.W.2d 220, 225 (Iowa 1982). Hemesaths claim the court should find as a matter of law that Baumler had greater knowledge than they of the actual condition of the ruts.

■ Like most questions bearing on negligence, whether the particular circumstances demand notice of warning is ordinarily for the jury. *Lakatosh v. Diamond Alkali Co.,* 208 N.W.2d 910, 913 (Iowa 1973). Our task on appeal is simply to review the evidence to determine whether reasonable minds could differ on the fact question posed. *See Stover,* 434 N.W.2d at 873. As already noted, the facts reveal that Jack Hemesath received warnings about the danger of the tire ruts as well as suggestions that he level the ruts with gravel before Baumler's accident from his sons Russell and Douglas. Furthermore, in at least one prior year, Hemesaths had in fact filled similar tire ruts with gravel to reduce the risk of harm. This proof gave the court sufficient evidence to send the question regarding Hemesaths' failure to warn to the jury. Moreover, the trial court properly submitted failure to warn as a separate specification of negligence. *See Rinkleff v. Knox,* 375 N.W.2d 262, 266 (Iowa 1985) (noting purpose of requiring jury to consider "specification of negligence" is to limit determination of factual questions arising in negligence claims to those acts or omissions on which claim is based and on which court has made a determination of sufficiency of evidence to generate jury question).

C. *Motion for new trial.* The Hemesaths next argue the trial court erred by failing to grant them a new trial. They urge reversal on two grounds. First they claim the jury's verdict is "incredible" and "contrary to the overwhelming weight of the evidence." Second, they claim the cumulative effect of erroneous evidentiary rulings prevented a fair trial. We find no merit in either contention.

Our decision on the sufficiency-of-evidence question is driven by our analysis in divisions A and B above. The jury was faced with a factual contest over the hazards posed by the work site and the parties' conduct under the circumstances. This is not the exceptional case in which a determination of negligence could be made as a matter of law. *See Lakatosh,* 208 N.W.2d at 913 (negligence questions for jury in all but exceptional case).

■ The first evidentiary issue concerns proof that two of the Baumlers' children suffer serious medical conditions. Baumler tendered the evidence, over Hemesaths' objection, to support his claim of mental pain and suffering caused by his reduced ability to care for them after the accident. We note that the testimony occupied less than one page of a 400–page transcript. Its admissibility rested in the sound discretion of the trial court. Even if we thought the evidentiary ruling was questionable, we could not say the court abused its discretion as a matter of law in refusing to grant a new trial based on its introduction.

■ The second evidentiary issue concerns Baumler's future medical expenses as an element of damages. Hemesaths claim the submission of this element to the jury was improper because the record contained insufficient proof as to the cost of future medical expenses. It was undisputed, however, that Baumler suffered severe and permanent injury. Baumler's physician testified that pain medication would need to be continued in the future. Furthermore, both Baumlers testified as to the cost of medication from the time of injury to the date of trial. Based on this cumulative proof, the jury could reasonably estimate the cost of Baumler's future medical expenses. *See Sieren v. Stoutner,* 162 N.W.2d 396, 403 (Iowa 1968). Therefore, we find the court was not incorrect in submitting this element of damages to the jury.

■ D. *Applicability of section 668.14(1).* Hemesaths also challenge the trial court's refusal to permit evidence of Baumler's insurance coverage for medical expense. The propriety of the ruling turns on whether Iowa Rule of Civil Procedure 97 applies, as the court ruled, or whether Iowa Code section 668.14(1)—which partially abrogates the collateral source rule—compels a different result.

Section 668.14(1) reads, in part:

In an action *brought pursuant to this chapter* seeking damages for personal injury, the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care, rehabilitation services, and custodial care except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.

(Emphasis added.)

Rule 97 provides:

In an action by an employee against an employer, or by a passenger against a common carrier to recover for negligence, plaintiff need not plead or prove his freedom from contributory negligence, but defendant may plead and prove contributory negligence in mitigation of damages.

Rule 97 has been in effect in one form or another since 1915. *See* Iowa Code § 35.93(a) (19__), Iowa Code § 11210 (1939). With its enactment, Iowa joined those jurisdictions moving away from the traditional rule of contributory negligence—which barred recovery for injuries if an employee was in any manner negligent—to a modified comparative negligence standard in which an employee's negligence does not bar recovery but merely mitigates damages. 53 Am. Jur.2d *Master and Servant* § 230 (1970); *see also Missouri P.R. Co. v. Castle*, 224 U.S. 541, 32 S.Ct. 606, 56 L.Ed. 875 (1912); *Mondou v. New York, N.H. & H.R. Co.*, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912). Such legislation was motivated by doubts that the traditional theory of contributory negligence led to justice in personal injury actions between employers and employees, *see* 53 Am. Jur.2d *Master and Servant* § 230 (1970), and a desire to encourage employers to prevent negligent acts and omissions, thus promoting safety in the workplace. *Mondou*, 223 U.S. at 51, 32 S.Ct. at 175–76, 56 L.Ed. at 346.

This court has frequently applied rule 97 since its inception. *See Olson v. Katz*, 201 N.W.2d 478 (Iowa 1972); *Erickson v. Erickson*, 250 Iowa 491, 94 N.W.2d 728 (1959);

*Lang v. Hedrick*, 229 Iowa 766, 295 N.W. 107 (1941); *Hunt v. Des Moines City Ry.*, 188 Iowa 1068, 177 N.W. 48 (1920); *Hunter v. Colfax Consol. Coal Co.*, 175 Iowa 245, 157 N.W. 145 (1916). Hemesaths nevertheless argue that chapter 668, enacted in 1984, effectively preempts rule 97 with regard to employer-employee negligence actions.

We have considered, and rejected, similar arguments in the realm of dramshop litigation and intentional torts. *See Slager v. HWA Corp.*, 435 N.W.2d 349, 352 (Iowa 1989); *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180 (Iowa 1990) (finding inapplicable a comparative fault defense to an intentional tort). Familiar rules of statutory construction lead us to reject the preemption argument in this case as well.

■ When the legislature acts with respect to a previously-enacted statute, it is presumed to know how we have construed and applied it. *Slager*, 435 N.W.2d at 352. Had the legislature intended to include employer-employee actions within chapter 668, it could easily have said so but did not. *See id.* at 353; *Tratchel*, 452 N.W.2d at 181. Prior to the adoption of chapter 668, our cases held that damages recoverable in an action by an employee against an employer could only be mitigated upon proof by the employer of the employee's contributory negligence. Iowa R.Civ.P. 97, *see Olson*, 201 N.W.2d at 480; *Erickson*, 250 Iowa at 495–96, 94 N.W.2d at 730; *Lang*, 229 Iowa at 775, 295 N.W. at 112; *Hunt*, 188 Iowa at 1072, 177 N.W. at 50; *Hunter*, 175 Iowa at 335, 157 N.W. at 146. These decisions, controlled by legislation dating from 1915, were motivated by public policy reasons still relevant today.

Absent a clear indication of legislative intent to apply chapter 668, we refuse to extend its coverage to areas explicitly included in rule 97. Accordingly we conclude that the district court properly refused to permit proof that some of Baumler's expenses were covered by insurance.

■ E. *Interest*. Finally, the Hemesaths cite two errors with respect to interest on the judgment. First, they claim the interest rate for Baumler's award of past damages should be governed by Iowa Code sec-

tion 668.13 instead of chapter 535. Second, they argue the court erred in imposing interest from the original filing date and not the date of the amendment to Baumler's petition.

Our decision in the preceding division controls the applicable interest rate. This case was tried pursuant to Iowa Rule of Civil Procedure 97, not chapter 668. Therefore, the interest provisions of the Comparative Fault Act do not apply. The district court was correct in so ruling.

As for the date from which interest has accrued, section 535.3 permits prejudgment interest from the date of the "commencement of the action." Viewing Baumler's claims as interrelated, the trial court applied the "relation back" principle of Iowa Rule of Civil Procedure 89 to justify the application of interest from the date of the original filing. Hemesaths assert, however, that in the case of an entirely separate claim which is joined by amendment, that rule should not control. We agree.

 "When monetary damages arise from distinct new claims made in an amended petition, we allow interest on the judgment only from the date plaintiff filed its amended petition." *Ezzone v. Riccardi*, 525 N.W.2d 388, 400 (Iowa 1994) (citing *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 169 (Iowa 1984); *Coachmen Indus., Inc. v. Security Trust & Sav. Bank of Shenandoah*, 329 N.W.2d 648, 651 (Iowa 1983)). Although the parties to the amendment were identical, and the claims and damages asserted similar to those in the original petition, Baumler's accidents were distinctly independent in time and nature. The jury found Hemesaths liable for the second work-related injury only. In fairness, interest should only accrue on that claim from the date the petition was amended to join it. We therefore reverse and remand on this issue for entry of a corrected judgment.

### III. *Cross–Appeal.*

The Baumlers argue on cross-appeal that the trial court erred when it set the interest rate for future damages at 3.58%, the rate called for by Iowa Code section 668.13(3). Consistent with the decision that rule 97, not chapter 668, applies to this case, they contend the court should have set interest at the rate prescribed by section 535.3. We agree. Thus we reverse and remand for entry of interest on the judgment at ten percent per annum.

**AFFIRMED IN PART AND RE-VERSED IN PART ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**