Patrick **WERNIMONT**, Appellant,

v.

William Joe **WERNIMONT**, Appellee.

No. 02–1284.

Supreme Court of Iowa.

Sept. 1, 2004.

Charles A. Blades, Cedar Rapids, for appellant.

Constance Alt and Theresa C. Davis of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

LAVORATO, Chief Justice.

In this personal injury action, Patrick Wernimont sued his father, William Wernimont, for injuries arising out of the use of a skid loader that William owned. Patrick alleged that as his employer, William owed him a duty to provide reasonably safe machinery and a reasonably safe place to work. Patrick also alleged William failed to warn him of the danger the skid loader presented under the circumstances in which it was used. The district court sustained William's motion for summary judgment on the issues of employment and failure to warn. Patrick appealed and we transferred the case to the court of appeals, which affirmed. We granted further review and on that review we vacate the court of appeals decision and reverse the district court judgment on both issues. We remand the case for further proceedings consistent with this opinion.

## I. Background Facts.

The incident giving rise to this lawsuit happened on William's farm on December 28, 2000. Patrick suffered crushing injuries to his feet when the hydraulic lift arms of a skid loader suddenly fell and pinned his feet to the top of the skid loader where he was standing. William had purchased the skid loader in 1993 and owned it on the date of the incident.

Patrick had been a hired hand on his father's farm for about eight years until August of 2000—three months before the incident. During this employment, William paid Patrick $1000 per month. The employment was not full-time; rather Patrick helped his father when he needed Patrick to do regular chores and other work. In addition to this employment, Patrick had his own farm. After August of 2000, Patrick continued farming and worked for a tree service. Patrick and William had a history of exchanging work.

On the day of the incident, William was feeding cattle on his farm. Some of the cattle belonged to Patrick and some belonged to William. William was using the skid loader in question for this chore. The skid loader had a bale spear (used to move hay bales) attached to the front end. The bale spear had on it a round hay bale, weighing over 1200 pounds. As William was operating the skid loader through a gate to the cattle, he raised the boom to see that he was not going to hit the cattle. While driving through the gate, William hit a patch of snow, causing the skid loader to tip forward on its front two wheels. The hay bale was touching the ground, and the back two wheels of the skid loader were off the ground.

William switched off the skid loader and went into the house for Patrick's help to right the skid loader. Although Patrick was ill with the flu, he felt well enough to help. While Patrick was dressing, William retrieved his tractor and log chain to pull the skid loader upright, but the skid loader was still "tippy." William then told Patrick to stand on the back-end of the skid

loader to counterbalance it. Suddenly, the boom dropped, pinning Patrick's feet to the skid loader.

## II.  Proceedings.

As a result of this incident, Patrick sued several product defendants as well as William. The product defendants eventually settled, leaving William as the only defendant.

Pertinent to this appeal, Patrick alleged in a count he captioned "negligence against William Joe Wernimont" that William was negligent in failing to warn him of the dangers associated with the skid loader. In a count he captioned "employer liability against William Joe Wernimont," Patrick alleged he was employed by William and for that reason William was liable to him pursuant to Iowa Rule of Civil Procedure 83 (now 1.416). Patrick further alleged that William, as his employer, was negligent in one or more of the following particulars:

(a) in failing to provide plaintiff with reasonably safe machinery;

(b) in failing to properly warn and instruct about the use of the machinery;

(c) in failing to provide a reasonably safe place to work;

(d) in operating or allowing the skid loader to be operated in an unsafe manner.

William filed a motion for summary judgment. Patrick resisted, contending there were genuine issues of material fact concerning the issue of an employer-employee relationship and one or more legally recognizable duties. Patrick filed an affidavit in support of his resistance.

The district court sustained the motion for summary judgment, concluding Patrick had not presented any evidence supporting an employer-employee relationship and that Patrick was doing a favor for his father, not work for his employer. The court also concluded that Patrick had established no duty running from William to him and therefore all of his negligence allegations, including the failure to warn, must fail.

Patrick appealed and we transferred the case to the court of appeals. The court of appeals affirmed the district court ruling, and thereafter we granted Patrick's application for further review.

## III.  Issues.

Although Patrick raised numerous issues, he preserved only two for our review. Those issues concern the district court's action in sustaining William's motion for summary judgment as to the employer-employee relationship and the negligence theory based on a common-law duty to warn.

## IV.  Scope of Review.

We review a summary judgment ruling for correction of errors at law. Summary judgment is appropriate under Iowa Rule of Civil Procedure 1.981 only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. We examine the record before the district court to determine whether any genuine issue of material fact exists and whether that court correctly applied the law. *Hegeman v. Kelch,* 666 N.W.2d 531, 533 (Iowa 2003) (citations omitted). In addition, we view the record in the light most favorable to the nonmoving party and allow that party all reasonable inferences that can be drawn from the record. *Delaney v. Int'l Union UAW Local No. 94,* 675 N.W.2d 832, 834 (Iowa 2004).

## V. Employer Liability.

■ As mentioned, Patrick alleged that he was employed by William on the date of the incident and for that reason William was liable to him pursuant to Iowa Rule of Civil Procedure 83, formerly rule 97, and now rule 1.416. This theory of liability becomes important from Patrick's standpoint, because under this rule, employer liability is governed by the "pure" comparative negligence principles of rule 1.416, not Iowa Code chapter 668 (comparative fault). *Ries v. Steffensmeier,* 570 N.W.2d 111, 113 (Iowa 1997). Thus, under rule 1.416, "proof of an employee's negligence, even if greater than fifty percent 'does not bar recovery but merely mitigates damages.'" *Id.* (citation omitted).

■ Moreover, establishing the relationship is important from an injured employee's standpoint because of the duty imposed by the relationship: employers must use reasonable care to provide and maintain for their employees reasonably suitable and safe machinery and tools with which to work, and a reasonably safe place to work. *Erickson v. Erickson,* 250 Iowa 491, 498, 94 N.W.2d 728, 732 (1959).

William contends the following elements cited in *Gabrielson v. State,* 342 N.W.2d 867, 870 (Iowa 1984), must be established to prove an employer-employee relationship:

"(1) the right of selection, or to employ at will; (2) responsibility for the payment of wages by the employer; (3) the right to discharge or terminate the relationship; (4) the right to control the work; and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed."

*Gabrielson,* 342 N.W.2d at 870 (citation omitted).

William asserts here that Patrick (1) was not receiving and had not received any wages from him for at least three months before the incident, (2) was self-employed at the time of the incident and worked for a tree service, and (3) had simply volunteered to help his father right the skid loader with no expectation of compensation for his assistance. In short, Patrick was simply a volunteer. In addition, William maintains that under Iowa law there is a presumption that worked performed between family members is gratuitous. For all these reasons, William concludes the principal elements for establishing an employment relationship were not present here; therefore, the district court was correct on this issue.

■ We have made clear that the five elements listed above are not controlling in every situation in which the issue is whether an employer-employee relationship exists. *Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 542 (Iowa 1997). Rather, the importance of the elements bearing on the existence of an employment situation varies. *Id.* (identifying primary elements for independent contractors, borrowed servants, and gratuitous employees). "[I]f the issue turns on whether the person is a 'gratuitous employee,' the most important element is the responsibility for payment of wages." *Id.; accord Usgaard v. Silver Crest Golf Club,* 256 Iowa 453, 456–57, 127 N.W.2d 636, 638 (1964). However, the parties' intent, even if not the primary factor, is always a consideration. *Iowa Mut. Ins.,* 572 N.W.2d at 542; *accord Usgaard,* 256 Iowa at 456, 127 N.W.2d at 638.

■ Important here are the exchange-of-work cases involving farmers. In those situations, we have held that

[e]ven where there is no specific arrangement for pay, but there is an exchange of work between farmers and an agreement that under such conditions

one farmer performs services for the other, ... the relationship of master and servant is present.

*Erickson,* 250 Iowa at 495, 94 N.W.2d at 730; *accord Ganzhorn v. Reep,* 234 Iowa 495, 499, 12 N.W.2d 154, 156 (1943). The agreement need not be express, but can be implied. *Ganzhorn,* 234 Iowa at 499, 12 N.W.2d at 156. And the custom to perform services furnishes consideration for the implied agreement. *Id.*

■ Also important here is that ordinarily whether an employment relationship exists is a fact question. *Heinz v. Heinz,* 653 N.W.2d 334, 344 (Iowa 2002).

Patrick filed an affidavit describing the alleged employer-employee relationship as follows. From approximately 1982 through and including the time of the incident, Patrick worked on his father's farm doing regular daily chores and other work his father needed done. Such other work included assisting William in operating William's machinery, feeding livestock, clearing William's fields, and other activities that typically take place on a farm during the fall and early winter seasons. William would tell Patrick what he needed to have done and how he wanted it done. Patrick would follow his instructions. During this time period, Patrick had his own farming operations, including livestock, custom combining, and raising corn and beans on property he leased. William allowed Patrick to (1) keep cattle and sheep on William's farm, (2) store corn and beans on the farm, and (3) keep his trailer and some equipment on the farm. In addition, William plowed fields on land that Patrick leased. These services benefited Patrick financially in his own farming operations.

The affidavit also describes what allegedly happened on the date of the incident:

As of the time that I was injured on December 28, 2000, I was working for my father in generally the same fashion as I had been working for him for almost twenty years. I did not "quit working" for my father. (I misspoke when I said this in my deposition.) I was no longer receiving a wage from my father. But he continued to provide me with the services that are described above and in exchange I worked for him on his farm.

When my father came into the house after tipping the skid loader, I felt it was my duty to help him because of the work exchange agreement that is described above. As was usual and customary in our working relationship on his farm, he was in charge of what we were doing with respect to the skid loader and I was only doing what he was telling me to do. I considered myself his employee.

■ Viewing the affidavit most favorably to Patrick and allowing him all reasonable inferences from it, we conclude for reasons that follow that it generates a genuine issue of material fact concerning the employment relationship at the time of the incident. From Patrick's affidavit, a fact finder could reasonably find the following. First, there was an implied if not an express agreement for an exchange of work beginning in 1982 through and including the date of the incident. Second, that agreement continued even though William discontinued paying Patrick a wage in August of 2000. Third, Patrick answered his father's call for help because of this work exchange agreement and not because of any gratuitous intention, thereby overcoming the presumption that the work was performed gratuitously because of the family relation. *See Youngberg v. Holstrom,* 252 Iowa 815, 822, 108 N.W.2d 498, 502 (1961). Fourth, in the effort to right the skid loader, William was in charge and control, and Patrick was acting at his direction. Last, Patrick considered

himself an employee. Significantly, William did not controvert any of these inferences by way of affidavit or deposition.

Thus, contrary to the district court ruling, genuine issues of material fact exist on the question whether, on the date of the incident, William as an employer owed Patrick a duty to provide reasonably safe machinery and a reasonably safe place to work.

## VI. Failure to Warn.

■■■ As mentioned, in a count captioned "negligence against William Joe Wernimont," the petition alleged that William was negligent because of his failure to warn Patrick about the dangers associated with the skid loader. Patrick also complains about the district court's rejection of this theory of liability.

■■■ The common-law duty to warn "is dependent upon superior knowledge and arises when one may reasonably foresee danger of injury or damage to one less knowledgeable unless forewarned of the danger." *Krueger v. Noel*, 318 N.W.2d 220, 225 (Iowa 1982).

To avoid summary judgment on the issue of failure to warn, Patrick had to generate a genuine issue of material fact concerning William's knowledge of the danger the skid loader presented when he directed Patrick to stand on its back-end to counterbalance it. Patrick also had to generate a genuine issue of material fact concerning his own unawareness of such danger. Again, viewing the record in the light most favorable to Patrick and allowing him all reasonable inferences from it, we think for reasons that follow that Patrick has generated such genuine issues of material fact.

William purchased the skid loader in 1993 and owned it at the time of the incident. The manual for the skid loader showed all the labels that were supposed to be on the machine. One of those labels stated: "NEVER STAND OR LEAN ANYWHERE ON LOADER OR LINKAGE WILL CRUSH YOU." The manual also warned that only the operator was supposed to be on the machine and riders were to be kept off of it. In his deposition, William claimed the label was not on the machine but admitted he had read the owner's manual. Patrick, on the other hand, testified in his deposition that he had neither seen the label nor read the owner's manual.

In his deposition, Patrick said he thought the boom, which dropped and pinned his feet to the skid loader, was raised "way over half." He therefore believed that William had engaged the boom lock pins. In his deposition, William said the boom was not raised high enough for him to use the boom lock pins, the pins were always used if the boom was high enough, and he knew the pins were a safety feature. William also said he did not tell Patrick that the boom lock pins were not engaged when Patrick came outside.

Viewing the testimony of father and son in the light most favorable to Patrick, the reasonable inference is that William had superior knowledge of the danger to Patrick that the skid loader presented when he directed Patrick to climb onto it. Moreover, Patrick was unaware of that danger. Therefore, contrary to the district court ruling, we conclude that a genuine issue of material fact exists on the allegation of the common-law duty to warn.

## VII. Disposition.

Because we conclude Patrick has generated a genuine issue of material fact on the allegations of the employer-employee relationship and failure to warn, we vacate the court of appeals decision and reverse the district court judgment to the contrary.

We remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except LARSON and CARTER, JJ., who take no part.