STATE v. SYLVESTER J. HESKIN, *d. b. a.* DEALERS INDEPENDENT OIL COMPANY, AND OTHERS. ROCK COUNTY BANK, RESPONDENT.[1]

December 11, 1942.

No. 33,264.

[1]Reported in 7 N. W. (2d) 1.

*J. A. A. Burnquist,* Attorney General, *Philip F. Sherman,* Assistant Attorney General, and *Faner C. Wonderly,* Special Assistant Attorney General, for the State.

*Mort B. Skewes,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Suit by the state to recover gasoline taxes, inspection fees, and penalties from defendant Heskin. The Rock County Bank and Neil Roberts, as sheriff of Rock county, were made additional parties defendant after the commencement of the action. The amended complaint asks a money judgment against Heskin for the amount claimed to be due, aggregating about $10,000; that the same be adjudged to be a lien superior to all other liens upon all his personal property; sale of said personal property and application of the proceeds to the payment of the lien; and that defendants be enjoined from "taking any steps, proceedings, or actions, in or out of court, for the sale, transfer, or foreclosure of the property enumerated in plaintiff's Amended Complaint."

The case was tried on a stipulation of facts, the material parts of which are embodied in the trial court's findings. They are substantially these: Heskin was licensed about September 22, 1938, as a distributor of petroleum products under the firm name of Dealers Independent Oil Company. He continued to act as a distributor until about June 25, 1941, when he discontinued business because of inability to pay gasoline taxes for May and June 1941. He paid all taxes prior to those accruing in May 1941.

From time to time, while he was engaged in distributing gasoline and oil, Heskin borrowed money from the Rock County Bank at Luverne, for which he gave his promissory notes. On April 15, 1941, he mortgaged certain personal property, consisting of trucks, automobiles, tanks, trailers, and pumps, to the bank to secure his indebtedness, then amounting to $7,200. The mortgage was duly filed.

On July 15, 1941, Heskin signed a written statement admitting that he was indebted to the state for taxes in the sum of $9,278.34, plus statutory penalties. July 19, 1941, the state brought action

against him for the recovery of taxes, inspection fees, penalties, and interest, asking that the same be adjudged a lien on all his personal property. Heskin answered admitting the indebtedness but denying the state's right to a lien. There being a default according to the terms of the chattel mortgage, the bank commenced foreclosure proceedings on July 28, 1941. Neil Roberts, as sheriff, took possession of the property covered by the mortgage for the purpose of offering it for sale upon the foreclosure. The state thereupon had the bank and the sheriff made parties defendant, and an amended complaint was served on all defendants. Heskin did not answer this complaint. The bank answered putting in issue the state's claim that its tax lien was superior to the interest of the bank under the chattel mortgage. It was agreed between the parties that the foreclosure sale be had and the proceeds thereof held and paid as directed by the final determination of this case. Action against the sheriff was thereupon dismissed. The court ordered judgment for the state against Heskin for the amount claimed and denied the other relief sought. The state appeals from the judgment.

The only question for determination is whether the state's lien for taxes is superior to the interest of the bank under its chattel mortgage. The rights of the parties depend upon the construction of the statute creating the tax lien, L. 1937, c. 476, § 2 (Mason St. 1940 Supp. § 2720-74), which reads:

"In case any tax imposed hereunder is not paid when due, a penalty of ten per cent of the amount thereof shall immediately accrue, and thereafter said tax and penalty shall bear interest at the rate of one per cent per month until the same is paid. The tax imposed hereunder and the penalties and interest thereon shall be a lien upon all and singular the property, estate and effects of the distributor or person from whom it is due, and shall take precedence of all demands and judgments against, and of all liens and encumbrances upon the property of, such distributor or per-

son. The lien herein referred to shall attach to the aforesaid property from the date of the inspection of said gasoline."

The state contends that the statute bears only one construction, namely, that its lien for unpaid gasoline taxes is superior to all other liens or encumbrances, whether in existence or not at the time of the accrual of the tax. It is the position of the bank (1) that at the time of the inspection and accrual of the gasoline tax it had legal title of Heskin's personal property by virtue of its chattel mortgage so that the state's lien could attach only to Heskin's equity of redemption; and (2) the question of title aside, that the chattel mortgage was executed and recorded more than 15 days before inspection of the gasoline, the tax on which is claimed to be a lien, and that the statute requires a construction giving it as a prior mortgagee priority over the tax lien.

The section here involved first appeared in L. 1925, c. 297, § 5. It merely provided the penalties contained in the first sentence. L. 1927, c. 434, § 3, added the second sentence, establishing a lien for unpaid taxes. L. 1937, c. 476, § 2, added the last sentence: "The lien herein referred to shall attach to the aforesaid property from the date of the inspection of said gasoline." In 1941 the entire section was repealed. L. 1941, c. 495, § 26.

Having reached the conclusion that the question can be disposed of as one of statutory construction, we need not consider the bank's theory that title passed to it upon execution of the chattel mortgage and that there was nothing upon which the state's lien could attach except Heskin's equity of redemption. That was the view adopted by the federal court in New York in North River C. & W. Co. v. McWilliams Bros. Inc. (D. C.) 32 F. (2d) 355, affirmed (2 Cir.) 37 F. (2d) 22. It also finds support in such cases as Savings & Loan Society v. Multnomah County, 169 U. S. 421, 18 S. Ct. 392; 42 L. ed. 803; Piedmont Corp. v. Gainesville & N. W. R. Co. (D. C.) 30 F. (2d) 525; United States v. Guaranty Trust Co. (8 Cir.) 33 F. (2d) 533, affirmed, 280 U. S. 478, 50 S. Ct. 212, 74 L. ed. 556. The opposite view is supported by State

v. Wynne, 134 Tex. 455, 133 S. W. (2d) 951; Motor Dealers Credit Corp. v. Heise, 166 S. C. 389, 164 S. E. 900; State Revenue Comm. v. Rich, 49 Ga. App. 271, 175 S. E. 394; Berryessa Cattle Co. v. Sunset Pacific Oil Co. (9 Cir.) 87 F. (2d) 972; California L. & T. Co. v. Weis, 118 Cal. 489, 50 P. 697.

However, we do not deem it necessary to decide the case on that point. It seems clear that the legislature did not intend to have its lien for taxes attach and become superior to other liens and encumbrances of record in existence prior to the date of inspection of the gasoline. If there was any confusion as to how and when the lien should attach, it seems that it was removed by the 1937 amendment, providing that the lien shall attach to the aforesaid property from the date of the inspection of the gasoline. We recognize that the state has the power to make its lien superior to existing encumbrances. Atlanta Trust Co. v. Atlanta Realty Corp. 177 Ga. 581, 170 S. E. 791; Marshall v. New York, 254 U. S. 380, 41 S. Ct. 143, 65 L. ed. 315; Moran v. Leccony S. C. Co. 122 W. Va. 405, 10 S. E. (2d) 578, 136 A. L. R. 1007. However, if the legislature intended such a drastic measure to entrench its treasury, it should have so provided in plain, unmistakable language. A tax is not a lien upon property except as made so by statute. State v. Security Nat. Bank, 139 Minn. 162, 165 N. W. 1067. Tax liens owe their duration, force, and effect entirely to the statutes creating them. Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293; State v. Rea, 189 Minn. 456, 250 N. W. 41.

The cases pertaining to possessory and improvement liens cited by the state are inapplicable here. Such liens attach to the property irrespective of ownership of the property. 33 Am. Jur., Priorities, p. 436, § 33. They are not comparable to liens imposed to insure collection of excise taxes, which owe their existence and effect entirely to the statute creating them. State v. Rea, 189 Minn. 456, 250 N. W. 41.

The judgment is affirmed.