# IN THE COURT OF APPEALS OF IOWA

No. 14-2137
Filed April 6, 2016

**DEBRA JO ROBESON,**
      Plaintiff-Appellant,

**vs.**

**VIETH CONSTRUCTION
CORPORATION,**
      Defendant-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister,

Judge.

A personal-injury plaintiff appeals a directed verdict in favor of the

defendant construction company. **REVERSED AND REMANDED**.

Chad A. Swanson and Laura L. Folkerts of Dutton, Braun, Staack &

Hellman, P.L.C., Waterloo, for appellant.

Karla J. Shea of McCoy, Riley & Shea, P.L.C., Waterloo, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Debbie Robeson injured her leg after catching her toe in the orange plastic webbing of a construction fence flattened across a nature trail. She sued Vieth Construction Corporation for negligence and presented her case at trial. The district court granted Vieth a directed verdict. Robeson appeals, contending the court incorrectly decided she was a trespasser as a matter of law and the court should have allowed the jury to decide whether the construction company breached its duty of care.[1] Because Robeson's evidence generated a jury question concerning Vieth's liability, we reverse and remand for a new trial.

## I.     Facts and Prior Proceedings

On April 12, 2012, Robeson set off with her friend Sheila Steffen for a lunch-hour walk on the Cedar Valley Nature Trail in Waterloo. The women were participating in the city's "blue zones" project that encourages residents to exercise and make other healthy choices. Robeson parked at a trailhead near the UNI-Center for Urban Education on Sycamore and East Sixth Streets. The nature trail runs parallel to the Cedar River.

---

[1] Robeson also raises a third issue, asking the Iowa Supreme Court to abolish the trespasser distinction for premises liability, a step the court already took for invitees and licensees. *See Koenig v. Koenig*, 766 N.W.2d 635, 645 n.2 (Iowa 2009) (expressing no opinion on continued validity of common-law doctrine involving trespassers); *see also id.* at 646 (Streit, J., specially concurring) ("The majority takes a much-needed step away from the premises liability trichotomy, but needlessly leaves standing one leg of a three-legged stool."). Because the supreme court did not retain this case, Robeson's request to invalidate existing case law cannot be addressed. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) ("[W]e are not at liberty to overturn precedent of our supreme court.").

The two women saw no "sidewalk closed" or other detour signs as they entered the trail, heading southeast toward Seventh Street. Robeson did see a bicyclist go by, as well as another pedestrian who was taking photographs along the trail. As they started to walk down the trail, the women noticed an orange construction fence "kind of laid across the sidewalk." Steffen described the fence as "very smooshed" and "low to the ground" —looking like it was in "disuse." She testified: "[I]t was almost like people had been going over it. . . . it was flat." According to Steffen, the fence was still attached to poles on either side of the trail, but was "riding very low."

As Robeson approached the fence she asked her friend: "What's going on here?"[2] Steffen responded: "I think they're going to build some apartment buildings. . . . But it's not a problem. The trail's been open." Steffen said some of her co-workers had walked on the trail earlier that day. Robeson also recalled seeing posts on either side of the trail where the construction fencing had been fastened. She said the orange fence was somewhat discolored and "looked abandoned" and "worn." She described the material as not laying "completely flat like a piece of paper . . . because of the nature of it, it is kind of bubbled or smooshed up in a spot or two." Robeson did not believe the trail was closed.

Steffen was walking a bit ahead of Robeson and went over the orange fence without any difficulty. Robeson saw Steffen step on the plastic, at least with one foot. Robeson testified she was "careful" when she crossed the

---

[2] Robeson recalled walking on the trail two or three times in March and did not remember seeing the fence across the trail.

flattened fence. But the toe of her tennis shoe caught in the webbing, and she fell forward, splaying into a military-pushup pose.

Robeson felt "instant pain" and cried out to Steffen. Steffen remembered Robeson looking "very ashen" and experiencing "a great deal of pain." They called Robeson's husband, who took her to the emergency room. Robeson had suffered an avulsed hamstring, essentially ripping the tendon away from the bone, which required surgery and a long, painful convalescence.

The orange construction fence was the property of Vieth Construction, who had contracted with the City of Waterloo to complete a portage project for kayaks and canoes to dock along the Cedar River. One of the docking locations was southeast of Sixth Street. The project required Vieth to build an access road across the nature trail so that it could move its excavating equipment to the river's level. As part of its contract with the city and at the direction of the project designer, Vieth erected a construction fence around its staging area. The fencing went up in April 2011 when work started. According to Vieth's project supervisor, Craig Kerns, maintaining the fence was a "big challenge" because keeping the nature trail closed was not popular with the public. During the summer of 2011, members of the public would tear down the fence "just about every day." Vieth employee Terry Bachman testified, "[E]very time we seen it down, we automatically put it back up." When the company "put it back up," the fence was taut across the trail. Tony Vieth testified his employees had to reset the construction fence "well over one-hundred times."

Kerns acknowledged Vieth did not install any closure signs at the trailhead where Robeson had parked. He also explained, originally, Vieth had placed orange barrels near the work zone to warn the public, but the company did not replace them when vandals threw them in the river. Moreover, the location of the access road, where Vieth's equipment crossed the trail to the river worksite during 2011 construction, was not visible from the point on the trail where Robeson encountered the flattened fence.

Due to flooding, the construction company did not complete the portage project during the summer of 2011. Vieth suspended its work during the cold-weather months in late 2011 and early 2012. Work had not yet resumed at the time of Robeson's accident on April 12, 2012. Neither Tony Vieth, Kerns, nor Bachman could recall the last time they had checked on the fence before Robeson fell. Kerns removed the fence from the trail after Robeson's fall, and at trial, he admitted the condition of the fence showed "neglect."

Robeson filed a negligence suit against Vieth on July 5, 2012. The petition alleged Robeson's injury was caused by Vieth's failure to "maintain the plastic fencing in good condition and the failure to warn trail users of the dangerous condition of the public way." In its answer, Vieth affirmatively stated "that third parties unknown were at fault for damaging the fence and that their fault was a proximate cause of the plaintiff's injuries." Vieth further alleged "the condition on the premises . . . was open and obvious," thus, it had no obligation to guard against it. Finally, Vieth's answer also asserted Robeson assumed the risk of injury by entering a construction site.

Vieth moved for summary judgment, alleging:

> Plaintiff was injured while trespassing into a closed construction site. A possessor of land owes no duty to a trespasser other than not to injure him willfully or wantonly, and to use reasonable care after his presence becomes known to avoid injuring him. . . . There is no evidence that Vieth willfully or wantonly injured the plaintiff or that, Vieth was aware of her presence or failed to act reasonably.

Vieth alternatively asserted:

> Even if this Court were to determine that a person stepping over a construction fence into a construction site were an invitee, a possessor of land owes no duty to warn an invitee of a known or obvious condition. . . . Plaintiff has admitted she knew the fence was there. The danger of tripping when stepping over a construction fence is obvious.

The district court denied summary judgment, concluding: "The defendant's knowledge of the continuous trespassing and the state of the collapsed orange fence raises a question for a jury to determine if the defendants used reasonable care to avoid injuring the trespasser."

The matter proceeded to jury trial in early December 2014. After Robeson rested her case on December 8, the district court granted Vieth's motion for directed verdict from the bench. The following day, the court filed a written order further explaining its decision not to submit the case to the jury. Robeson challenges the court's directed verdict on appeal.

## II. Scope and Standards of Review

We review a district court's ruling on a motion for directed verdict for the correction of legal error. *Figley*, 801 N.W.2d at 609. The district court is required to direct a verdict for the defense only if the record lacked substantial evidence to support the elements of the plaintiff's claim. *Deboom v. Raining Rose, Inc.*, 772

N.W.2d 1, 5 (Iowa 2009). We consider the evidence substantial when "reasonable minds would accept the evidence as adequate to reach the same findings." *Id.* A directed verdict is improper when reasonable minds could differ on an issue; in that situation, "the case must go to the jury." *Id.* We view the evidence in the light most favorable to Robeson. *See Figley*, 801 N.W.2d at 610. "District courts are encouraged to deny motions for directed verdict," because it "is considered more prudent for the court to submit even a weak case to the jury to avoid another trial in case of error." *Hill v. Damm*, 804 N.W.2d 95, 98 (Iowa Ct. App. 2011).

### III. Analysis of Robeson's Claims

#### A. Trespasser

As a threshold matter, Robeson contends the district court wrongly labelled her a "trespasser" when she was walking on a public nature trail at a time when the circumstances did not clearly show the trail was closed to the public. Her status as a trespasser would dictate a higher bar in proving Vieth negligent. *See generally Sallee v. Stewart*, 827 N.W.2d 128, 133 (Iowa 2013) (observing Iowa premises-liability law generally limits the duty owed to a trespasser "to avoiding willfully or wantonly careless conduct").

Our common law defines "trespasser" as "one who has no legal right to be upon another's land and enters the land without the express or implied consent of the owner." *Alexander v. Med. Assocs. Clinic, P.C.*, 646 N.W.2d 74, 76 (Iowa 2002); *see also* Restatement (Second) of Torts § 329 (Am. Law Inst. 1965) (defining trespasser as "a person who enters or remains upon land in the

possession of another without a privilege to do so created by the possessor's consent or otherwise") [hereinafter Restatement (Second)].[3]  "[O]ne who is where [s]he has a right to be is not a trespasser."  *Mann v. Des Moines Ry. Co.*, 7 N.W.2d 45, 51 (Iowa 1942).

Robeson asserts she was not a trespasser because the Cedar Valley Nature Trail was a public thoroughfare, and Vieth had not posted any signs or barricades at the trailhead to signal that a section of the trail was closed to the public.  She relies on a theory of privilege: "A traveler is privileged to enter that part of the land in the possession of another upon which there is a public highway, in so far as his presence there is in the reasonable use of the highway." Restatement (Second) § 192 (including comment d, defining highways as encompassing paths for pedestrian use and bicycle lanes).

Robeson further argues she had implied consent to use the trail because the "compressed fence invited people to continue using the trail and, in fact, the public continued to use the trail."  *See* Restatement (Third) § 50 cmt. d ("[A]pparent consent can be difficult to determine.").  "In determining whether [Vieth's] conduct would be understood by a reasonable person as indicating consent, the customs of the community are to be taken into account.  This is particularly true of silence or inaction."  *See id.*

---

[3] New to the Restatement (Third) is a distinction between the duties of care owed to a "flagrant trespasser" and an "ordinary trespasser."  *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 52 (Am. Law Inst. 2012) [hereinafter Restatement (Third)].  The drafters reasoned that a flagrant trespasser's "presence on another's land is so antithetical to the rights of the land possessor . . . that the land possessor should not be subject to liability for failing to exercise the ordinary duty of reasonable care otherwise owed to them as entrants on the land."  *Id.* cmt. a.

We agree with Robeson that the evidence at trial did not establish her status as a trespasser as a matter of law. The district court ruled Robeson was a trespasser because "the premises were still a construction site, and, by express provision of the construction contract, not open to the public."[4] But our case law has long recognized a member of the public is not a trespasser if he or she is injured at a location where the possessor has acquiesced in public use. *See Mann*, 7 N.W. at 52 (holding plaintiff was rightfully using crossing where the street car company had "impliedly invited" public use by lodging no objection). Here, the condition of the fence—trampled down by previous trail users over the winter months, discolored, and abandoned-looking—did not provide members of the public, who were otherwise privileged to use the trail, with unambiguous notice that the possessor, Vieth, had not acquiesced to public use and had closed that segment of the trail for construction. "Where a plaintiff who is alleged to have been a trespasser presents evidence that would, if believed, support a finding that he or she was [a lawful visitor] at the time he or she was injured, the plaintiff's status is a question for the jury." 62 Am. Jur. 2d *Premises Liability* § 121 Practice Guide (2016); *see also Ambroz v. Cedar Rapids Elec. Light & Power Co.*, 108 N.W. 540, 540 (Iowa 1906) (discussing propriety of jury

---

[4] The district court relied on Restatement (Second) section 329, comment c, which explains the definition of trespasser and states, in pertinent part:

> So far as the liability of the possessor of the land to the intruder is concerned . . . the possessor's duty, and liability, will be the same regardless of the manner of entry, so long as the entry itself is not privileged. The determining fact is the presence or absence of a privilege to enter or to remain on the land, and the status of an accidental trespasser is still that of a trespasser.

instruction on whether plaintiff was trespasser); *Eshoo v. Chicago Transit Auth.*, 723 N.E.2d 339, 343 (Ill. Ct. App. 1999) ("Where, as here, a plaintiff's status at the time of his injury is disputed or different inferences may be drawn from undisputed facts, the plaintiff's status as invitee or trespasser is a question of fact for the jury."). The district court should have allowed the jury to determine Robeson's status. *See* Restatement (Third) § 50 cmt. e ("If there is a dispute about . . . the appropriate factual inferences to be drawn from [the historical facts] relevant to the plaintiff's status as a trespasser, the jury must resolve the dispute, find the facts, and determine the entrant's status with appropriate instructions.").[5]

### B. Negligence

#### 1. In General

To prove a defendant was negligent, a plaintiff must show the following: "(1) the existence of a duty; (2) failure to exercise reasonable care; (3) factual cause; (4) physical harm; and (5) harm within the scope of liability (previously called 'proximate cause')." *Hill*, 804 N.W.2d at 99 (applying Restatement (Third)). While the first element is a question of law for the court to determine, elements two through five "are factual questions to be determined by the fact finder." *Id.*; *see also Asher v. OB-GYN Specialists, P.C.*, 846 N.W.2d 492, 498 (Iowa 2014) (stating the court erred in instructing jury on causation under the "abandoned" Restatement (Second) standards rather than the scope-of-liability

---

[5] Restatement (Third) section 50 comment e also explains: "Unless the trial is bifurcated and the plaintiff's status resolved separately from any alleged injury, alternative instructions will be required, irrespective of whether the jury is to return a general verdict or a special verdict."

standard in Restatement (Third)); *Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 699 (Iowa 2013) ("Scope-of-liability determinations are fact-intensive, requiring consideration of the risks that make an actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks.").

Although Vieth first lobbied for affirming the district court's finding that Robeson was a trespasser as a matter of law, it alternatively urges her trespasser status is not essential to upholding the directed verdict on appeal—"even under the lawful entrant standard, Vieth would not be liable for injury from this open and obvious and known condition"—Robeson saw the condition of the fence and "the need to navigate it. . . . She simply stumbled while doing so. . . . There was no evidence that there was any dangerous condition about the fence on the ground that Vieth should have known Robeson would not see and protect herself from."

### 2. Premises Liability for Lawful Entrant

In examining Vieth's alternative argument, we start with the premises-liability standard for a lawful entrant. "A land possessor owes a duty of reasonable care to entrants on the land with regard to (a) conduct by the land possessor that creates risks to entrants on the land; [and] (b) artificial conditions on the land that pose risks to entrants on the land . . . ." Restatement (Third) § 51; *see generally Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 775-78 (Iowa 2013) (applying Restatement (Third) in premises-liability case).

Here, Robeson alleges Vieth created an unreasonable risk of harm by not maintaining the fence stretched across the trail. She argues on appeal: "Vieth placed the fence across the trail. It knew the fence was there, and it knew the fence did not remain erect, nor did it signal to pedestrians that the trail was closed. Rather, it simply created a hazard." Robeson's argument is echoed in the Restatement comments discussing the general duty of land possessors: "While the conduct involved in constructing artificial conditions may have occurred some time in the past and thus would not constitute 'active operations,' the possessor has, nevertheless, created a risk of harm for which the ordinary duty of reasonable care is applicable." Restatement (Third) § 51 cmt e.[6]

The district court concluded no reasonable jury could find that Vieth had "actual or constructive notice of the condition of the fence between the time it was vandalized and the time of plaintiff's accident." Robeson disputes this conclusion, pointing to evidence Vieth's employees knew the fence was torn down with "great frequency" during the 2011 construction and supervisor Kerns's admission the fence's dilapidated state in April 2012 was due to "neglect."

We disagree with the district court's determination that, as a matter of law, Vieth could not be held accountable because vandals damaged the fence at

---

[6] In *Hoyt*, 829 N.W.2d at 775, the Iowa Supreme Court cited to *Thompson v. Kaczinski*, 774 N.W.2d 829, 834-35 (Iowa 2009), and acknowledged *Thompson's* adoption of "the general duty formulation" of section 7 of the Restatement (Third), which section states: "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." The *Thompson* court stated, "[I]n most cases involving physical harm, courts need not concern themselves with the existence or content of this ordinary duty, but instead may proceed directly to the elements of liability." 744 N.W.2d at 834 (citation omitted). Vieth recognizes the applicability of *Thompson* in its appellee's brief.

"some unknown time." When viewing the evidence in the light most favorable to Robeson, we conclude she presented a jury question as to whether Vieth exercised reasonable care in regard to monitoring the condition of the fence it had stretched across the trail. Vieth's duty of reasonable care "includes reasonable care to discover dangerous conditions on the land and to eliminate or ameliorate them." *See id.* cmt. i. The primary factors to consider in determining whether Vieth exercised reasonable care "are the foreseeable likelihood of harm, the foreseeable severity of any potential harm, and the burden required of the land possessor to eliminate or reduce the risk." *See id.* The land possessor's duty to inspect the premises depends on the existing circumstances. *Id.* If dangerous conditions may crop up regularly and pose risk to entrants, reasonable care may demand periodic inspections. *Id.* We conclude Robeson's evidence generated a jury question concerning Vieth's duty to inspect and fix the fence during its hiatus from construction. *See id.* ("When reasonable minds could differ about the facts or about whether, given those facts, reasonable care was exercised, the issue is for the jury.").

### 3. Open-and-Obvious Hazards

We next turn to Vieth's argument concerning the open-and-obvious nature of the dangerous condition posed by the flattened fence. "An obvious danger means that both the condition and the risk are apparent to, and would be recognized by, a reasonably prudent person." *Baumler v. Hemesath*, 534 N.W.2d 650, 653 (Iowa 1995). The common law reflected in Restatement (Second) section 343A(1) requires possessors of land to take reasonable

precautions for known or obvious dangers when the possessor "should anticipate the harm despite such knowledge or obviousness." Our supreme court relied on section 343A in concluding "negligence may exist even though a defect is, in fact, open and obvious where the circumstances are such that there is reason to believe . . . the risk of harm involved would not be anticipated or appreciated" by the lawful visitor.[7]  *See Hanson v. Town & Country Shopping Ctr., Inc.*, 144 N.W.2d 870, 875 (Iowa 1966).  "In such circumstances there may be generated a jury question as to whether the premises are reasonably safe."  *Id.* (overturning directed verdict where plaintiff was injured after falling on ice in defendant's parking lot and stating a defect in the premises need not be "hidden or in the nature of a trap or pitfall in order to constitute negligence").

It is true Robeson saw the flattened orange fence and tried to cross it with care, while walking at a normal pace on the trail.  But the open-and-obvious nature of the hazard presented by the fence does not automatically relieve Vieth of its duty toward trail users like Robeson.  *See Baumler*, 534 N.W.2d at 653 (holding reasonable jury could find farm owners acted negligently toward experienced farm worker who tripped in a tractor tire rut, though the rut presented an open and obvious risk).  As in *Baumler*, Robeson's evidence

---

[7] According to Restatement (Third) section 51 comment k:
> [Restatement (Second) section 343A(1)] requires possessors to take reasonable precautions for known or obvious dangers when the possessor "should anticipate the harm despite such knowledge or obviousness." The duty imposed in [Restatement (Third) section 51 and amplified in comment k] is consistent with section 343A, although it is extended beyond the invitees covered in section 343A to all entrants on the land (except for flagrant trespassers under [Restatement (Third)] section 52).

presented jury questions on whether Vieth could have or should have anticipated that the construction fence, left unattended across the path, would have been pushed down by vandals—as had been done scores of times in 2011—and whether in its flattened state, the fence presented a tripping hazard to members of the public who took to the trail in the spring of 2012.

Vieth argues Robeson simply "didn't pick her feet up high enough and tripped." The company also contends Robeson presented "no evidence that there was any dangerous condition about the fence on the ground that Vieth should have known Robeson wouldn't see and protect herself from." We disagree. A reasonable jury could determine the fence bore a deceptively innocent appearance that obscured the extent of the tripping hazard posed by the uneven plastic webbing. "[D]espite the opportunity of entrants to avoid an open and obvious risk, in some circumstances a residual risk will remain. Land possessors have a duty of reasonable care with regard to those residual risks." Restatement (Third) § 51 cmt. k.[8] Rather than automatically precluding liability,

---

[8] Restatement (Third) section 51 comment k also discusses the disconnect between the open-and-obvious doctrine as an absolute bar to recovery and comparative fault:

> An entrant who encounters an obviously dangerous condition and who fails to exercise reasonable self-protective care is contributorily negligent. Because of comparative fault, however, the issue of the defendant's duty and breach must be kept distinct from the question of the plaintiff's negligence. The rule that land possessors owe no duty with regard to open and obvious dangers sits more comfortably—if not entirely congruently—with the older rule of contributory negligence as a bar to recovery.

The Reporter's Note on comment k further expounded:

> The rule that a land possessor was not subject to liability for any open and obvious danger is much easier to justify in an era when contributory negligence constituted a complete bar to recovery. An entrant who fails to take self-protective measures may be contributorily negligent and, if so, that would avoid any liability by the possessor.

the open-and-obvious nature of the condition "bears on the assessment" of whether the land possessor exercised reasonable care. *Id.* (explaining "[w]hen land is held open to the public and a high volume of entrants can be anticipated, a reasonable possessor should anticipate greater risk, requiring greater precaution than if the land is private or few entrants are likely").

When viewing these facts in the light most favorable to Robeson, reasonable minds could differ on whether Vieth, as possessor of the nature trail at the location leading up to its access road, acted negligently toward trail users such as Robeson. *See Hill*, 804 N.W.2d at 104-05 (discussing and applying the newly formulated risk standard in the Restatement (Third) and overturning directed verdict). Accordingly, we reverse the district court's grant of Vieth's motion for directed verdict and remand the case for a new trial.[9]

**REVERSED AND REMANDED**.

---

> However, such a rule cannot be justified after contributory negligence becomes a comparative defense. . . . In that respect, other earlier rules applicable to a land possessor's duties appear premised on and incorporate contributory negligence as a complete defense to liability.

[9] Because we conclude Robeson is entitled to a new trial based on her common law negligence claim, we need not address her appellate claims premised on a duty of care allegedly owed to her under Vieth's contract with the City of Waterloo or under the Manual on Uniform Traffic Control Devices. We take no position on the viability of those claims in the new trial.